JOHN McGUIRE *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Juries. Opinion disqualifying. Code* 1892, § 2355.

If a juror on his *voir dire* disclose that he has an opinion touching defendant's guilt which would require testimony to remove, and has doubts of his ability to render an impartial verdict, it will not be error for the court to exclude him from the panel, under the last clause of code 1892, § 2355, which authorizes the exclusion of any proffered juror if the court be of opinion that he cannot try the case impartially.

2. Same. *Lost indictment. Certified copy. Secret record.* Code 1892, § 1347. *Constitutional law.*

If an indictment be lost the defendant can be tried upon a certified copy made from the secret record of indictments provided for by code 1892, § 1347, which section is valid and constitutional.

3. Same. *Evidence. Minutes of the court.*

The minutes of the court in the particular case being tried are before the court and the formal putting of the same in evidence is superfluous.

4. Same. *Arraignment.*

If a defendant be arraigned upon the original indictment which is afterwards lost, it is unnecessary to arraign him again before or as a part of his trial upon a certified copy.

5. Same. *Reading of indictment to jury. Conclusive presumption.*

It is unnecessary for the record to show that the indictment was read to the jury; it will be conclusively presumed that the jury was informed of the precise nature of the charge.

6. Same. *Statutory pardon. Constitutional law. Ex post facto statute. Death penalty. Imprisonment for life.*

A statute providing that juries in capital cases may fix the punishment at imprisonment for life in the penitentiary is not *ex post facto*, even in its application to offenses committed before its passage and when the death penalty was fixed by law.

7. Same. *Lessening penalty.*

A law is not *ex post facto* which mollifies the rigor of the criminal law.

8. Same. *Bar of prosecution. Laws* 1872, *p.* 80, *sec.* 8.

If a prosecution be otherwise barred, under the limitation provided by sec. 8, laws of 1872, p. 80, it cannot escape the bar on the ground that a previous indictment for same offense was found within the statutory time on unsatisfactory evidence thereof.

9. Same. *Impeachment of verdict. Evidence of jurors.*

A verdict, however made, may not be impeached by the evidence of the jurors who rendered it.

From the circuit court of Marshall county.

Hon. Z. M. Stephens, Judge.

The facts are fully stated in the opinion of the court.

*D. M. Featherstone* and *W. A. McDonald*, for appellant.

When the court ordered that the trial proceed on a certified copy of the indictment, the defendant had a right to plead thereto and should have been arraigned thereon. He might have shown that it was not a copy of the indictment.

The statute of limitations is a complete defense, and when it has once attached the subsequent repeal of the statute does not take away the defense. Inasmuch as the offense charged in this case was committed prior to April 5, 1872, and, therefore, covered by the terms of the statute of that date, a subsequent repeal of that statute, in 1873, could not take away the complete defense which by the act of 1872 had become vested. *Thompson* v. *State*, 54 Miss., 740.

It was proper to instruct the jury that, if the killing occurred in 1869 and there was no indictment until 1898, and that defendant was in the state two years between 1869 and 1873, then this prosecution was barred and the jury should acquit.

*Mayes & Harris*, on same side.

In this case there has been a statutory pardon. Bayliss was killed on February, 26, 1869. The code of 1857 was then in force, and its provision was, simply, that every person who shall be convicted of murder shall suffer the death penalty. See p. 600, art. 167. Afterwards the act of April 5, 1872, was passed, and section five thereof provided that no person shall be incompetent as a juror because of conscientious scruples against capital punishment, but in cases heretofore deemed capital the jury may adjudge the penalty to be death, or imprisonment for life in the penitentiary, and the court may, in all cases, cause the verdict to be amended in its form, etc. The act of 1872 was *ex post facto* as applied to a previous offense. 7 Am. & Eng. Enc. L, 527, sec. 3; *Shepherd* v. *People*, 25 N. Y,, 406; *Herber* v. *State*, 7 Texas, 69; *Lindsey* v. *State*, 65 Miss., 542, 546.

"It is enough for courts to render judgments according to law, without being required to determine the relative severity of different punishments, when there is no common standard in the matter by which the mind can be satisfactorily guided," etc.   Cooley's Con. Lim.

The prosecution was barred by the statute of limitations of two years, fixed by the same act of April 5, 1872.  Act of 1872, p. 89, sec. 8.  The state endeavored to avoid the effect of the statute and to sustain an indictment, found twenty-nine years after the killing, by an effort to bring the case under the rule of *Thompson* v. *State*, 54 Miss., 740, and to that end endeavored to show an indictment found in 1869, and subsequently lost.  The effort was a complete failure.  The appellant denies that any prosecution was begun in 1869.

*Wiley N. Nash*, attorney-general, for appellee.

There was ample evidence to justify the jury in concluding that an indictment was found, drawn up and returned in 1869. The grand jury having found the bill, everything will be presumed to have been done, and properly done, that the law required to be done.  "*Omnia præsumuntur et solemnutur esse acta dones probetur in contrarum.*"  Bouvier's Law Dictionary (Rawle's Rev.), vol. 2, p. 369.  If the indictment was found, as it certainly was, then the statute of limitations cuts no figure in the case.

In addition to this, as soon as the murder took place appellant fled, and was a fugitive from justice until the time of his arrest and bringing back to this state for trial.  All of his statements as to coming back to Mississippi were mere fabrications, of which the jury did not believe a word.  It was a mere naked and bald declaration of a man trying to save his life.  If he was in the state, it was a skulking presence here.  But, in fact, he was not here, as the jury were amply justified in believing.  If he had been in Mississippi, near Natchez, he could have readily had any

number of witnesses present to testify positively to the fact. The nonproduction of such testimony is a strong circumstance and strong presumption against him. Starkie on Evidence (2d Am. ed.), vol. —, 488; *McCann* v. *State*, 135; Smed. & Marshall, 493.

Appellant had to be tried upon a certified copy of the indictment, and it is claimed that he did not plead thereto. It will be seen that there is a formal arraignment and plea entered to the indictment, to this identical charge. It is a plea in this case. One arraignment, one plea in any case, civil or criminal, is all the law requires. The issue was formally and legally joined.

A jury will not be allowed to impeach their verdict or tell what they thought would be the effect thereof. *Jones* v. *Edwards*, 57 Miss., 30. Affidavits of jurors cannot be received to impeach their verdict. *Friar* v. *State*, 3 How. (Miss.), 426; *Riggs* v. *State*, 26 Miss. As to introduction of jurors as witnesses on motion of new trial, see *Jacobs* v. *State*, 36 Miss., 137; *Organ* v. *State*, 26 Miss., 83; 3 *Wharton's Am. Crim. Law*, sec. 3155.

Take the whole case in all of its phases and there is not a legal principle upon which appellant can successfully claim a reversal of this case, and it is confidently asked that the judgment be affirmed.

Argued orally by *Edward Mayes*, for appellant, and by *Wiley N. Nash*, attorney-general, for appellee.

Terral, J., delivered the opinion of the court.

John McGuire, at the August term, 1898, of the circuit court of Marshall county, was tried and convicted of the murder of William Bayliss, and sentenced to be hanged. The killing occurred on the twenty-sixth day of February, 1869, and at the February term, 1898, of Marshall county circuit court an indictment against the said McGuire for the mur-

der of said Bayliss was found and returned into court, and he was at that term of court, upon said indictment, after being duly arraigned thereon, put upon his trial for said crime, but the jury failing to agree upon a verdict, a mistrial was had and entered of record. The indictment against McGuire was recorded in the "Secret Record of Indictments," duly made by the clerk of the circuit court, under § 1347 code of 1892, and at the August term, 1898, of the court, said indictment being lost, the defendant was put upon his trial, over his objection, and was tried upon a certified copy of the indictment pursuant to § 1347, code of 1892.

The sections of the act of April, 1872, material to this case are as follows (Laws 1872, pp. 80 and 89):

"Sec. 5. *Be it further enacted*, That no person shall be incompetent as a juror because of conscientious scruples against capital punishment; but in cases heretofore deemed capital, the jury may adjudge the penalty to be death, or imprisonment for life in the penitentiary, and the court may, in all cases, cause the verdict to be amended in form."

"Sec. 8. *Be it further enacted*, That all prosecutions for criminal offenses heretofore committed shall be commenced within two years after the commission thereof, and not after; *Provided*, This section shall not apply to any cause in which the offender shall have fled from the state."

The defendant pleaded not guilty, and under that plea sought to avail himself of the statute of limitations of two years under section eight of said act above quoted, and which act he was well authorized to interpose against the prosecution, as a perfect shield against it, unless the proviso to said section eight excepted him out of the operation of the act.

Upon the trial the district attorney, supported by some uncertain evidence on that line, insisted that the defendant, before the passage of the act of April 5, 1872, had been indicted for said crime, and so the act had no application to the case (*Thompson v. State*, 54 Miss., 740); but that if he was not supported in this

contention, he yet insisted upon the case made that McGuire had fled from the state, and so the application of the statute of limitations to the case became a vital point of inquiry.

By the laws in force when the crime was committed (code 1857, p. 614, art. 257) it was provided: "All indictments must be presented to the court by the foreman of the grand jury, in the presence of at least twelve of such jury." And the evidence as to the finding of an indictment against McGuire in 1869 was so shadowy and uncertain that it could not support a verdict of the jury resting upon such contention as a material fact in the case, because at most it raised a mere probability of the fact of the return of the indictment into court, and did not preclude reasonable doubt on the subject.

The court gave for the state instruction No. 1, as follows:

"1. The court instructs the jury for the state that, if you believe from the evidence, beyond a reasonable doubt, that a grand jury of Marshall county, in 1869, found an indictment against John McGuire for the killing of William Bayliss, and since that date said indictment has been lost or destroyed, then the statute of limitations does not bar the prosecution, and you should not acquit him on that account."

And refused instruction No. 22 for the defendant, as follows:

"22. The court instructs the jury that an indictment which is not presented to the court by the grand jury is invalid, and the marking of an indictment by the clerk is the evidence that it was found by the grand jury, and an indictment not so presented to the court and marked filed by the clerk has not been found in any legal sense and has no validity."

The action of the court on these instructions is assigned for error.

Cook, being offered as a juryman, stated, on his *voir dire*, that he had an opinion of the guilt of the defendant, which it would require testimony to remove, and that he had doubts whether he could, if taken, render a fair and impartial verdict, and he was excluded by the court and the defendant excepted.

The jury having convicted the defendant of murder, without fixing his punishment at imprisonment in the penitentiary for life, as under the instructions of the court they might have done, the defendant, on a day subsequent to his conviction and on his motion for a new trial, offered Utley, one of the jurors, and proposed to prove by him that he thought, when rendering the verdict given in the case, that it would give the defendant a sentence of from one to five years in the penitentiary, and that he had no idea that he would have to be hanged; and the defendant also offered the testimony of seven others of the jury to prove their views of the matter, coinciding with those of Utley, and all this proffered evidence was excluded, and the action of the court therein excepted to.

The defendant at the February term, 1898, of the court was arraigned upon the indictment found against him at that term for the murder of Bayliss, and put upon his trial therefor, but a mistrial was had. At the ensuing August term, 1898, of the court it was discovered that the indictment was lost, whereupon the defendant was then tried upon a copy of said indictment, duly certified from the record book of indictments kept, under § 1347, code 1892, but without any new arraignment, and there is no certain evidence that the copy of the indictment upon which the defendant was tried was read to the jury, the defendant, or the court, and this omission and action are claimed to be erroneous and harmful.

Just before the verdict of guilty was returned into court, the jury informed the officer attending them that they desired further instructions as to their verdict. This wish was communicated to the judge and to the defendant's counsel, and the latter declined to have the jury state their difficulties, in order to their removal, whereupon the jury immediately returned their verdict. The defendant objected to the reading of the minutes of the February term, 1898, of the court, showing, among other things, the arraignment of the defendant. He

objected also to being tried on a copy of the indictment taken from the record of the indictments.

1. *Juror Cook.* The action of the court in excluding the juror, Cook, is, we think, in accord with the principles of law heretofore in use in the impanelment of jurors; at least it is justified by the last clause of § 2355, code 1892.

2. We see no reason for complaint by the defendant that he was tried upon a certified copy of the indictment. We know of no constitutional provision that forbids it; in change of ·venue cases it is provided that accused persons shall be tried on a certified copy of the indictment, and such practice has often been followed, without objection, and we are not advised that any valid objection could be made against it. The act requiring the recording of indictments would be useless unless it answered the purpose of supplying a lost indictment.

The minutes of the court in any particular case are before the court when on hearing, and their being put in evidence was superfluous.

The record showed that the defendant had been arraigned upon the indictment in this case and had pleaded not guilty, and that rendered it unnecessary to arraign the defendant again. 2 Enc. Pl. & Pr., 771.

The objection that the record of the proceedings does not show that the indictment was read to the jury cannot prevail; the record in no case is required to show such fact; nevertheless it is always presumed that such is the case.

The circuit court is a court of superior jurisdiction, requiring in capital cases that the defendant be represented by counsel, if he desires it, and one of the leading objects in the trial of a case is that the jury, as well as the court, may understand the question before it, and it is to be conclusively presumed, without express evidence to the contrary, that the judge saw to it that the jury were informed of the precise nature of the charge against the person whose life was committed to their hands.

*Pardon.* It is claimed that the act of April 5, 1872, oper-

ated as a statutory pardon of the defendant, because it author-
ized the jury to fix the punishment for murder at imprisonment
for life in the penitentiary, instead of leaving it to the court of
adjudging the death penalty unless such imprisonment be fixed
by them, and contained no saving clause as to former offenses.
Our state constitution forbids the enactment of *ex post facto*
laws, and if the act of 1872 falls within that category, the
defendant is entitled to a discharge.   *Ex post facto* laws are
defined as follows:   "(1) Every law that makes an action done
before the passing of the law, and which was innocent when
done, criminal, and punishes such action; (2) every law that
aggravates a crime, or makes it greater than it was when com-
mitted; (3) every law that changes the punishment and inflicts
a greater punishment than the law annexed to the crime when
committed; (4) every law that alters the legal rules of evidence
and receives less, or different, testimony than the law required
at the time of the commission of the offense, in order to con-
vict the offender.    But I do not consider any law *ex post
facto*, within the prohibition, that mollifies the rigor of the
criminal law; but only those that create or aggravate the
crime, or increase the punishment, or change the rules of evi-
dence for the purpose of conviction."    Chase, J., in *Calder* v.
*Bull*, 3 Dallas, 386.

   If the act of 1872 is *ex post facto* as to the defendant it is
because the case falls within the second or third class enumera-
ted in Judge Chase's opinion, and because the death penalty is
less than imprisonment for life.    It was in 1872, as it is now,
a matter of common knowledge that many persons, when called
upon to qualify themselves for jury service in capital cases,
declared themselves opposed to capital punishment, and the
fifth section of the act of 1872 was intended to obviate the
scruples of those conscientiously opposed to the inflicting of
the death penalty, some of whom believed that that penalty
should not be inflicted in any case, nor could be rightly im-
posed by human authority; and it was unquestionably the

opinion of the legislature that life imprisonment in the state penitentiary was a mitigation of the death penalty. Christian people have always regarded the infliction of death as the extreme penalty for crime, and such opinion necessarily results from the principles of their religion.

There are courts which hold that any change in the mode of punishment makes the law *ex post facto*, but other authorities coincide with the opinion expressed by Judge Chase in *Calder* v. *Bull*, *ubi supra*, and hold that it is the infliction of a greater punishment that makes the law *ex post facto*, while the infliction of a different punishment, unless it is also a greater one, does not so operate. In passing the act of 1872 we are satisfied that the legislature considered life imprisonment a more merciful punishment than death, and we fully believe the general sentiment of the Christian world approves the opinion.

4. *Statute of limitations.* The evidence as to the finding of a bill of indictment against the defendant before the passage of the act of 1872 was too doubtful to be laid before the jury, and was wholly insufficient to prevent the operation of the bar of two years contained in section eight of the act of 1872. Under the two years of limitation of the act of 1872, an indictment against the defendant was barred, unless he was excepted from the operation of the last clause of section eight of said act, which declares that: "This section shall not apply to any case in which the offender shall have fled from the state."

The evidence of the finding of an indictment in this case in 1869 should have been disregarded, as too uncertain for consideration, and the instructions of the court authorizing the jury to disregard the bar of the two years under the act of 1872 if an indictment had been found against the defendant before April 5, 1872, was error.

5. The court properly refused the evidence of the jury to impeach their verdict. They had not been satisfied with their understanding of the instructions given to them, and had made an ineffectual attempt to be enlightened on the subject, and had

applied to the court for fuller instructions, but its being given to them was declined by the defendant's counsel.

Their finding, however made, may not be impeached by their evidence.

We give no opinion as to the operation of the statute of lim-itations under the act of 1872.

*Reversed and remanded for a new trial.*