263 So.2d 767 (1972)
HATTIESBURG FIREFIGHTERS LOCAL 184 et al.
v.
CITY OF HATTIESBURG, Miss., et al.
No. 46715.
Supreme Court of Mississippi.
June 12, 1972.
Rehearing Denied July 3, 1972.
Rex K. Jones, Hattiesburg, for appellants.
Frank D. Montague, Jr., Hattiesburg, for appellees.
*768 SUGG, Justice:
Appellants appealed from a decree of the Chancery Court of Forrest County, Mississippi upholding the validity of an ordinance of the City of Hattiesburg requiring all members of the Fire Department, Police Department and all other employees of the City of Hattiesburg holding office or position under any of the civil service laws applicable to the City to maintain their domicile and principal place of residence within the corporate limits of the City during the period of their employment.
*769 Similar requirements as to residence have been upheld in various jurisdictions involving residency requirements arising under state statutes, municipal ordinances and civil service commission rules. See Salt Lake City Fire Fighters Local 1645 v. Salt Lake City, 22 Utah 2d 115, 449 P.2d 239 (Utah 1969); Jackson v. Firemens & Policemens Civil Service Commission, 466 S.W.2d 412 (Tex.Civ.App. 1971); Detroit Police Officers Association v. City of Detroit, 385 Mich. 519, 190 N.W.2d 97 (1971); Mercadante v. City of Paterson, 111 N.J. Super. 35, 266 A.2d 611 (1970); Manion v. Kreml, Ill. App., 264 N.E.2d 842 (1970); City of Middlesboro v. Grubbs, Ky., 363 S.W.2d 95 (1962).
Other cases hold that a municipality may require its employees to be residents of the municipality, and that such requirements do not violate the constitutional rights of such employees.
In Kennedy v. City of Newark, 29 N.J. 178, 148 A.2d 473 (1959), the New Jersey Court, in a case in which city employees challenged the constitutionality of an ordinance limiting civil service selections to city residents, stated:
The question is not whether a man is free to live where he will. Rather the question is whether he may live where he wishes and at the same time insist upon employment by government. [Citation omitted.] If there is a rational basis for a residence requirement in furtherance of the public welfare, the constitutional issue must be resolved in favor of the legislative power to ordain it... . (29 N.J. 183, 148 A.2d 476.)
The Court also indicated that in addition to having employees ready for emergency the municipality could require residence for the purpose of enhancing performance by way of interest incentive and stated:
Government may well conclude that residence will supply a stake or incentive for better performance in office or employment and as well advance the economy of the locality which yields the tax revenues... . (29 N.J. 183, 148 A.2d 476.)
We hold that there is no constitutional prohibition against a municipality requiring its employees to be residents thereof.
Appellants argue, however, that the City of Hattiesburg did not have the authority to enact the subject ordinance because of the provisions of Section 3825-09 of the Mississippi Code 1942 Annotated (1956) which is as follows:
All applicants for a position of any kind under civil service must be a citizen of the United States and an elector of the county in which he resides and must have so resided for a period of at least three years immediately preceding the filing of his application.
Appellants contend that the City of Hattiesburg can only exercise such powers as are delegated by the Legislature to municipalities and that such powers should be exercised in conformity to and consistent with the general laws of the state; that a municipality has no power except that delegated to it by the state; that powers of a municipality are to be construed most strongly against an asserted right not clearly given and cannot be extended by mere implication; that if there is conflict between a municipal ordinance and a state statute the latter must prevail, and cite in support thereof Watkins v. Navarrette, 227 So.2d 853 (Miss. 1969); Alexander v. Edwards, 220 Miss. 699, 71 So.2d 785 (1954); King v. City of Louisville, 207 Miss. 612, 42 So.2d 813 (1949); City of Jackson v. Freeman-Howie, Inc., 239 Miss. 84, 121 So.2d 120 (1960); Knight v. Johns, 161 Miss. 519, 137 So. 509 (1931); City of Hazlehurst v. Mayes, 96 Miss. 656, 51 So. 890 (1910); Crittenden v. Town of Booneville, 92 Miss. 277, 45 So. 723 (1908) and Steitenroth v. City of Jackson, 99 Miss. 354, 54 So. 955 (1911).
Appellants have correctly stated the law with reference to the power and authority *770 of municipalities in Mississippi, but the question in this case is whether Section 3825-09, supra, prohibits the enactment of the subject ordinance, or whether the ordinance is an additional regulation not in conflict with the provisions thereof.
In City of Jackson v. Lee, 252 So.2d 897 (Miss. 1971) an ordinance of the City of Jackson, Mississippi requiring persons operating or riding upon any two-wheeled, self-propelled vehicle upon any public street or highway within the City of Jackson, Mississippi to wear a crash helmet, this Court held that the provision of the ordinance was not in conflict with any provision of the Uniform Highway Traffic Regulation Act, but was merely an additional traffic regulation which the statute specifically grants local authorities the right to enact.
We are of the opinion that the subject ordinance is not in conflict with Section 3825-09, supra, but is an additional regulation which is within the power granted by the Legislature to municipalities operating under the commission form of government by virtue of Sections 3374-53 and 3374-54 Mississippi Code 1942 Annotated (1956) which read in part as follows:
Section 3374-53.
Except as limited by law, the counsel [sic] shall have, exercise, and perform all executive, legislative, and judicial powers, duties, and obligations bestowed upon governing authorities of municipalities by this act or by any other general law with regard to municipalities, except in cases of conflict between such laws and this article, in which case this article shall control. The council shall also have the power, from time to time, to create, fill, or discontinue any and all offices and employments other than those created in this Article III; to increase or decrease the emoluments thereof; to make all needful rules and regulations for the government of the officers and employees of such city and to enforce a strict observance thereof, and to change the same when deemed necessary; to remove any officer or employee elected or appointed by the council, except as limited by law, and to elect or appoint a successor; ... (Emphasis supplied.)
Section 3374-54.
The executive and administrative powers and duties in such cities shall be distributed into and among as many departments as there shall be members of the council, to be defined and designated by ordinance. The council shall, by ordinance, determine the powers and duties to be exercised and performed by each department, and shall assign the various officers and employees of the city to the appropriate department; shall prescribe the powers and duties of such officers and employees and make all such rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the city. ... (Emphasis supplied.)
These statutes grant municipalities the authority to "make all needful rules and regulations for the government of the officers and employees of such city" and to "make all such rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the city." While not specifically spelling out the authority of a city to require its employees to be residents thereof, the language is broad enough to permit such a rule or regulation by a city in the exercise of its legislative power if such would promote the efficient conduct of the business of the city.
The second assignment of error attacks the subject ordinance which requires civil service employees to reside within the corporate limits as being discriminatory on its face because it does not require all city employees to reside within the corporate limits.
It is argued that the ordinance places members of the Fire Department, Police Department and other civil service employees *771 in a different class or category from other city employees. Legislative classifications for various purposes have been upheld, and in George Day, d/b/a George Day's Studio v. Klein, 225 Miss. 191, 82 So.2d 831 (1955), cited with approval in McCardle v. City of Jackson, 260 So.2d 482 (Miss. 1972), this Court stated:
Section 4 of the ordinance provides that it "shall not apply to the sale or soliciting of order for the sale of milk, dairy products, vegetables, poultry, eggs, and other farm and garden produce so far as the sale of the commodities named herein is now authorized by law." Appellant contends that this exemption is an arbitrary and unreasonable classification without any basis in fact. Municipal corporations may make proper classifications of persons or things for various purposes of legislation. A municipal regulation, in order to be valid, does not necessarily have to operate on all alike, provided it operates equally on each class embraced within its provisions. In order that it be unlawfully discriminatory, it must discriminate between persons in a like situation. 62 C.J.S., Municipal Corporations, § 150, pp. 309-311... . (225 Miss. at 205, 82 So.2d at 837.)
In Rinaldi v. Yeager, 384 U.S. 305, 308, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966) the Supreme Court of the United States summarized the tests to be applied a state statute under the Equal Protection Clause of the United States Constitution and stated:
The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. McLaughlin v. State of Florida, 379 U.S. 184, 189-190, 85 S.Ct. 283, 286-287, 13 L.Ed.2d 222. It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. "The Constitution does not require things which are different in fact ... to be treated in law as though they were the same." Tigner v. State of Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made." Banstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620; Carrington v. Rash, 380 U.S. 89, 93, 85 S.Ct. 775, 778, 13 L.Ed.2d 675; Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 37, 48 S.Ct. 423, 425, 72 L.Ed. 770; Royster Guano Co. v. Commonwealth of Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561-562, 64 L.Ed. 989. (384 U.S. 308, 309, 86 S.Ct. 1499, 1500, 16 L.Ed.2d 580.) (Emphasis supplied.)
We are of the opinion that the ordinance is not an improper classification because the availability of firemen and policemen on short notice directly affects public health and safety in the event of fires, riots or violations of law involving a large number of people. An ordinance requiring such employees to reside within the city has "some relevance to the purpose for which the classification is made" in that they would more likely be available in the event of an emergency.
In other jurisdictions courts have held that ordinances or laws requiring specified officers to reside in the city did not violate equal protection clauses of the state and federal constitutions even though it permitted residence requirements to be waived under certain conditions for most other city employees. See Detroit Police Officers Association v. City of Detroit, supra; Manion v. Kreml, supra; Berg v. City of Minneapolis, 274 Minn. 277, 143 N.W.2d 200 (1966); City of Middlesboro v. Grubbs, supra.
*772 The last two assignments of error are that the ordinance requiring appellants to move within the city within 60 days is unconstitutional because it is an ex post facto law and violates Article I, Section X and the Fourteenth Amendment of the Constitution of the United States, and Article III, Sections 14 and 16 of the Constitution of the State of Mississippi.
Ex post facto laws were defined in McGuire v. State, 76 Miss. 504, 25 So. 495 (1898):
Our state constitution forbids the enactment of ex post facto laws, and, if the act of 1872 falls within that category, the defendant is entitled to a discharge. Ex post facto laws are defined as follows: "(1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action. (2) Every law that aggravates a crime, or makes it greater than it was when committed. (3) Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed. (4) Every law that alters the legal rules of evidence and receives less, or different, testimony, than the law required at the time of the commission of the offense in order to convict the offender. But I do not consider any law ex post facto, within the prohibition, that mollifies the rigor of the criminal law, but only those that create or aggravate the crime, or increase the punishment, or change the rules of evidence, for the purpose of conviction." Chase, J., in Calder v. Bull, 3 Dall. 386 [1 L.Ed. 648]. (76 Miss. 512-513, 25 So. 497).
The ordinance does not impair the obligation of contracts, does not affect vested rights and does not partake of the character of ex post facto laws. The ordinance is prospective and the fact that present employees affected by it are required to establish a domicile or principal place of residence within the city within sixty days does not make it retrospective.
In Salt Lake City Fire Fighters Local 1645 v. Salt Lake City, supra, a Salt Lake City ordinance contained a provision that appointive officers and employees residing outside a 15 mile radius from Washington Square at the effective date of the ordinance would be required, within two years thereafter, to establish residency within Salt Lake City.
In passing on this question, the Utah Court stated:
It is conceded that there will be cases of hardship and inconvenience for some in order to continue their employment with the City, which is regrettable, but we cannot subscribe to the theory of counsel that place of residence is a God-given, constitutional right, determinable and enforceable by an employee against his employer who offers and gives the employee his job, unless such right contractually is protected. (449 P.2d 240.)
The ordinance is an exercise of the police power of the municipality and the rule is well established that any exercise of police power is valid if it has for its object the protection and promotion of the public health, safety, morality or welfare, if it is reasonably related to the attainment of that object, and if it is not oppressive, arbitrary or discriminatory.
The ordinance is a valid exercise of the police power of the City of Hattiesburg in that it relates to the public safety, is reasonably related to the attainment of that object and is not oppressive, arbitrary or discriminatory.
Affirmed.
RODGERS, P.J., and BRADY, PATTERSON and SMITH, JJ., concur.