**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 93-CA-01112-SCT**

*RENEE MAYNARD D/B/A KOUNTRY KLUB AND WESTERN CONNECTION, INC.*

*v.*

*CITY OF TUPELO, MISSISSIPPI, A MUNICIPAL CORPORATION; JACK MARSHALL, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF TUPELO, MISSISSIPPI; THE CITY OF TUPELO, MISSISSIPPI, BOARD OF ALDERMEN; PAUL EASON, ALDERMAN AT LARGE, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF ALDERMEN FOR THE CITY OF TUPELO, MISSISSIPPI; JACK WILLIAMS, ALDERMAN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF ALDERMEN FOR THE CITY OF TUPELO, MISSISSIPPI; RANDY HEADING, ALDERMAN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF ALDERMEN FOR THE CITY OF TUPELO, MISSISSIPPI; JOHN COLLINS, ALDERMAN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF ALDERMEN FOR THE CITY OF TUPELO, MISSISSIPPI; BOYCE GRAYSON, ALDERMAN, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF ALDERMEN FOR THE CITY OF TUPELO, MISSISSIPPI; CAROLYN MAULDIN, ALDERMAN, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF ALDERMEN FOR THE CITY OF TUPELO, MISSISSIPPI; BEN LOGAN, ALDERMAN IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF ALDERMEN FOR THE CITY OF TUPELO*

| | |
|---|---|
| DATE OF JUDGMENT: | 9-16-93 |
| TRIAL JUDGE: | HON. JOHN C. ROSS |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | JOSEPH C. LANGSTON |
| | DAVID CHANDLER |
| ATTORNEYS FOR APPELLEES: | JAMES ARDEN BARNETT |
| | GUY W. MITCHELL, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 2/27/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/20/97 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶**1.** The present appeal calls upon this Court to determine whether the Tupelo "Brown Bag" Ordinance (TBBO), which prohibits commercial establishments in Tupelo from allowing the consumption of alcohol between the hours of midnight and 7 a.m., is inconsistent with and/or preempted by applicable statutes. This Court concludes that the Legislature has not clearly expressed an intent to deny municipalities the right to pass ordinances restricting businesses from permitting the consumption of alcoholic beverages on their premises. Absent such a clear indication of intent, this Court concludes that the public policy considerations are so strongly in favor of the TBBO that said ordinance should be permitted to stand. Accordingly, this Court affirms the Chancellor's ruling to that effect.

## II. STATEMENT OF THE CASE AND FACTS

¶2. On May 5, 1993, the City of Tupelo conducted a public hearing regarding the need for the regulation of "brown bag clubs," i.e. establishments which do not sell alcoholic beverages, but which permit the consumption thereof on their premises. The appellants in the present case, Kountry Klub (Kountry) and Western Connection, Inc. (Western), were given notice of this hearing, but they did not attend. Following the hearing, the Tupelo City Council adopted the Tupelo "Brown Bag" Ordinance, and said ordinance became effective on June 5, 1993. The TBBO prohibits all commercial

establishments, not merely brown bag clubs, from allowing the consumption of alcoholic beverages on their premises between midnight and 7 a.m.

¶3. Following the passage of this ordinance, Kountry Klub and Western Connection, Inc., filed for a temporary restraining order and preliminary injunction in the Chancery Court of Lee County against enforcement of the ordinance. Following a hearing, the Chancellor on June 2, 1993, rejected the request for a preliminary injunction on the grounds that said injunction would be a disservice to the public interest. The City of Tupelo subsequently filed a Motion for Summary Judgment on the issue of whether the City had the authority to enact said ordinance.

¶4. On September 16, 1993, the Chancellor partially granted the City's motion for summary judgment, ruling that "there is no genuine issue of fact as to the key issue in the matter; that is, that the action of the City of Tupelo in enacting the ordinance in question is a proper exercise of a governmental function of the municipality -- police power." Western and Kountry timely appealed from this ruling.

### III. ISSUES

**A. Did the Chancellor err in granting the City of Tupelo's motion for summary judgment since the Tupelo "Brown Bag" ordinance is preempted by state statutes?**

**B. Did the Chancellor err in granting the City of Tupelo's motion for summary judgment, since the Tupelo "Brown Bag" ordinance outlaws what statute authorize?**

¶**5.** The first two points of error are combined as they both deal with the issue of whether Tupelo had the authority to pass the TBBO or whether said ordinance was preempted by applicable statutory authority. The Chancellor's ruling merely stated that the TBBO was a valid exercise of police power and said ruling does not mention the preemption issue. Nevertheless, Western is correct in asserting that Tupelo is without authority to pass ordinances which are preempted by applicable Mississippi statutes.

¶6. Miss. Code Ann. § 21-17-5 (1992 rev.), the Home Rule statute, provides that:

(1) The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances. In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities shall have the power to adopt any orders, resolutions or ordinances with respect to such municipal affairs, property and finances which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi, and shall likewise have the power to alter, modify and repeal such orders, resolutions or ordinances.

Thus, the Home Rule statute grants municipalities the right to adopt ordinances with regard to their "municipal affairs" but only if said ordinances are not inconsistent with state legislation and/or the Mississippi Constitution. The relevant inquiry for this Court in the present case is whether the TBBO is inconsistent with applicable alcohol-related statutes set forth by the Legislature. The TBBO provides that:

> **Hours of Consumption**: No person, operating a public or private commercial establishment shall permit the consumption of alcoholic beverages on the premises of such establishment between the hours of 12:00 midnight and 7:00 a.m.

Western argues that this ordinance is pre-empted by applicable statutory authority, particularly by Mississippi statutory authority which expressly permits the possession of alcoholic beverages in those municipalities such as Tupelo which have elected out of the "dry" provisions. Miss. Code Ann. § 67-1-7 provides that:

> Subject to all the provisions and restrictions contained in this Chapter, the manufacture, sale, distribution, possession and transportation of alcoholic beverages shall be lawful, subject to the restrictions hereinafter imposed, in those counties and municipalities of this state in which, at a local option election called and held for that purpose under the provisions of this chapter, a majority of the qualified electors voting in such election shall vote in favor thereof.

The aspect of the TBBO which provides Western with the strongest argument that said statute is inconsistent with § 67-1-7 is the definition in the ordinance of "consumption." Western notes that the TBBO defines consumption as including not only the "ingestion of alcoholic beverages," but also the "possession of any alcoholic beverages in any type of drinking container or in any bottle, can or other container upon which the seal, cork, or cap has been opened." Western argues that this provision serves to limit possession in contravention of statute.

¶7. Western's argument is not without merit, given that the TBBO does in fact limit the possession of opened containers of alcohol. However, this Court is of the view that the aforementioned provision is a reasonable and necessary one which facilitates the enforcement of the limitations on the consumption of alcoholic beverages. It appears to this Court that an ordinance requiring the city to prove the actual ingestion of alcoholic beverages could be impossible to enforce, and the TBBO does in fact allow a citizen to possess alcoholic beverages so long as the beverages are not in open containers as such is defined in the TBBO.

¶8. The Legislature has not clearly expressed an intent that the consumption of alcoholic beverages, as opposed to the mere possession thereof, be permitted without limitation in wet areas. Absent such a clear expression of intent, the public policy considerations in favor of granting a municipality the right to prevent accidents and deaths related to drunken driving, alcohol related altercations, and similar societal ills are so strongly in favor of Tupelo that this Court will allow the ordinance to stand. This Court notes that the TBBO does not provide for a penalty against individual citizens who possess opened containers of alcohol in brown bag establishments, but rather provides for penalties against the brown bag establishments, which are unregulated by the statutory alcohol provisions.

¶9. This Court further notes that the Legislature has granted municipalities the authority to impose regulations relating to alcohol in important areas. Miss. Code Ann. § 67-3-65, for example, provides that municipalities may "enforce such proper rules and regulations for fixing zones and territories, prescribing hours of opening and of closing, and for such other measures as will promote public health, morals, and safety, as they may by ordinance provide." This Court concludes that Western is incorrect in asserting that the entire area relating to the regulation of alcohol is preempted by the extensive regulation of this area by the Legislature. The Legislature appears to understand the

importance of granting local governments the power to regulate the impact of alcoholic beverages within their communities.

¶10. The Legislature has also demonstrated an understanding of the dangers of permitting the consumption of alcoholic beverages at businesses until the early hours of the morning. Miss. Code Ann. § 67-3-53 prohibits "licensed premises" from selling or giving away beer or wine between the hours of 12 midnight and 7 a.m., and Tupelo argues persuasively that the TBBO furthers the public policy objectives behind the statute by restricting businesses from permitting the consumption of alcoholic beverages during these same hours. The public is not at any lesser degree of risk from an individual who has the foresight to purchase a bottle of hard liquor and then proceeds to mix the liquor with "set ups" sold at an unlicensed brown bag establishment than it is from an individual who becomes intoxicated on beer bought at a licensed bar.

¶11. It is difficult for this Court to accept that the Legislature would endeavor to prevent the selling of alcohol past midnight at licensed establishments, but at the same time deny municipalities the authority to promote the safety of their citizens by enacting a roughly similar provision with regard to establishments such as brown bag clubs, which are not licensed to sell alcoholic beverages under applicable statutory authority and which do not fall under the regulation of the ABC. Indeed, the statutory scheme, as Western would have this Court interpret it, would appear to indirectly, and, no doubt, unintentionally, promote drunken driving by encouraging citizens, many of them already intoxicated, to get in their cars at midnight and resume their drinking at a "brown bag" establishment.

¶12. It is probably not an exaggeration to suggest that many citizens of this State have been injured or even killed as a result of this very practice which is encouraged by the statutory scheme as Western would have this Court interpret it. If Western's interpretation of the applicable statutes is correct, then this Court would respectfully submit that the statutes are in need of revision. This Court is not convinced that Western's interpretation of the statutes is correct, however, and absent a clear indication of legislative intent to the contrary, this Court agrees with Tupelo that the TBBO was not preempted by statute.

¶13. Western notes the unsuccessful attempts by municipalities to persuade the Legislature to pass legislation expressly granting municipalities permission to pass brown bag ordinances. Jack Marshall, Mayor of Tupelo, testified that the Legislature failed to pass legislation granting permission for Tupelo to pass a brown-bag ordinance similar to the one in the present case. Mr. Marshall testified that he nevertheless considered it incumbent upon himself and the Board of Aldermen to pass the ordinance anyway, given that "when it gets down to our citizens, it is the Mayor and Board of Aldermen's responsibility to protect our citizens."

¶14. The record indicates that the aforementioned attempts to have the Legislature expressly grant municipalities the authority to regulate brown bag clubs "died in committee." In the view of this Court, the fact that the proposed legislation did not pass the committee stage is not a sufficiently strong indication of legislative intent. There are many reasons why proposed legislation could "die in committee," and the record reveals no affirmative indication that the Legislature intended to allow the unrestricted consumption of alcohol in wet areas. The consent of the Legislature would be required for a municipality to pass an ordinance which is inconsistent with applicable statutes, but, as discussed earlier, this Court concludes that the regulation of consumption rather than possession of

alcohol in the TBBO is not inconsistent with existing statutes.

¶15. Although the present issue is one of first impression for this Court, the issue has been considered in the past in the form of Attorney General (AG) Opinions. The consistent position of the AG has been that the passing of "brown bag" ordinances is precluded by statutory authority. The AG re-affirmed in a recent ruling the view of that office with regard to the authority of municipalities to pass ordinances restricting the possession of alcohol in brown-bag clubs:

> As stated above, state law clearly authorizes possession and consumption of light wines and beer within certain meticulously detailed state parameters. It is readily apparent that consumers who fall within these state parameters may lawfully possess and consume the regulated beverages. Any local ordinance that places additional restrictions will effectively prohibit what the state expressly allows.

Thus, the Attorney General concluded that the applicable state legislation permits not only the possession, but also the consumption, of alcoholic beverages subject only to the restrictions contained in the applicable statutes. This Court disagrees, however. Miss. Code Ann. § 67-1-7 refers solely to the "possession" of alcoholic beverages and does not mention consumption. The Legislature may or may not have intended that the consumption of such beverages in wet counties should not be restricted by municipalities, but this Court is unwilling to read the statute more expansively than it is written in light of the public policy considerations in favor of the TBBO and similar ordinances.

¶16. The Chancellor's ruling concluded that the TBBO was a valid exercise of police power, and Western does not appear to challenge this ruling on appeal. In the interest of completeness, however, this Court notes the correctness of the Chancellor's ruling in this regard. This Court noted in *Hattiesburg Firefighters Local 184 v. City of Hattiesburg*, 263 So.2d 767 (Miss. 1972) that "(T)he rule is well established that any exercise of police power is valid if it has for its object the protection and promotion of the public health, safety, morality or welfare, it is reasonably related to the attainment of that object, and is not oppressive, arbitrary, or discriminatory."

¶17. Chief Billy White of the Tupelo Police Department testified that, with regard to the six "brown-bag" clubs operating within Tupelo city limits:

> In the year 1992, we had a total of 68 reported offenses at all six clubs. The problem since January 1st seems to have just skyrocketed, the number of offenses reported at all of these establishments. If we continue at this present rate ... you're looking at an average of 12 offenses per month. We will double, more than double the rate of the prior year 1992's offenses.

Chief White testified that the offenses involved included "simple assaults, aggravated assaults involving weapons such as knives and guns, disturbance calls" as well as public drunkenness and similar offenses. It is clear that the TBBO has as its objective the promotion of the public safety and welfare of Tupelo, and this Court also concludes that the TBBO promotes those objectives in a manner which is not unduly oppressive, arbitrary, nor discriminatory." This Court concludes that the Chancellor's ruling was correct and the ruling is accordingly affirmed.

> **C. Did the Chancellor err in granting the City of Tupelo's motion for summary judgment since the ordinance operates too close to Appellant's businesses without affording a due**

**process hearing and since it is inconsistent with statutory procedures for abating nuisances?**

¶18. Western's next argument is that the City did not give notice of the public hearing as being an abatement of a public nuisance proceedings. Western claims that the ordinance was the functional equivalent of an abatement of a nuisance and that notice of the proceedings should have been given.

¶19. Western argues that:

> Of course, the destruction of Western Connection's business was done without any due process hearing. Nothing more than a generalized "public" hearing, wherein general complaints about after-hours clubs were made was had. No notice of hearing or hearing was given on the issue of whether Plaintiffs' businesses constituted a "nuisance", so as to be subject to the Mississippi statutes regarding abatement of nuisances. *citing* Miss. Code Ann. § 95-3-7.

This argument is without merit. Western concedes that the City published notices in local papers regarding a town meeting to consider the issue of a "brown bag" ordinance, and Western and Kountry representatives did not attend the meeting. The fact that the City did not follow the statutory procedures for abatement of nuisance proceedings is easily explained by the fact that the City was not conducting abatement of nuisance proceedings at all.

¶20. Tupelo argues persuasively that "Tupelo did not follow statutory procedures for abating nuisances, because Tupelo never attempted to abate, or even declare, the clubs as nuisances and it still has not. Tupelo *legislated* an ordinance which applies not only to brown bag clubs, but to every other commercial establishment within boundaries of Tupelo." In ***Bi-Metallic Investment Co. v. Colorado Board of Equalization***, 239 U.S. 441 (1915), Justice Oliver Wendell Holmes noted that "The Constitution does not require all public acts to be done in a town meeting or assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard." ***Bi-Metallic***, 239 U.S. at 445.

¶21. Western cites as authority the case of ***Town of McCool v. Blaine***, 11 So.2d 801 (Miss. 1943), but this Court in the case struck down an ordinance forbidding all businesses to stay open past 11 p.m. as not being a valid exercise of police power. The case is inapplicable to the present issue. *McCool*, 11 So.2d at 802. This Court concludes that the publicized town meetings which were held on the issue of the proposed ordinance, but which Western and Country did not attend, sufficiently protected the due process rights Western and Kountry in the present case. This point of error is without merit and is overruled.

> **D. Did the Chancellor err in granting the City of Tupelo's motion for summary judgment since there was an issue of material fact as to whether the Brown Bag ordinance had the effect of destroying Appellant's businesses in violation of Mississippi Constitution, Section Seventeen and United States Constitution Amendment Five?**

¶22. In the fourth point of error, Western complains that the summary judgment ruling was in error because there was a "material issue of fact" as to whether a taking had occurred pursuant to the Mississippi and United States Constitutions. This Court concludes that there exist no material issues

of fact as to whether the ordinance in the present case constitutes a "taking". Under applicable authority, a "taking" will only be held to have occurred when an ordinance deprives the landowner off "all economically beneficial use of land," (See *Florida Rock Industries, Inc. v. United States*, 18 F.3d 1560, 1564 (Fed. Cir. 1994)) and the ordinance in the present case only served to limit the hours in which alcohol was permitted to be consumed. This Court concludes that the TBBO did not constitute a "taking" of Western's property. This point of error is without merit and the Chancellor's ruling is accordingly affirmed in its entirety.

¶23. JUDGMENT IS AFFIRMED.

**LEE, C.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

**¶24.** The relevant inquiry here is whether the City of Tupelo can override Miss. Code Ann. § 67-1-7 by passing its own ordinance regarding consumption and possession of alcoholic beverages. Because, in this context, consumption is synonymous with possession, and the Tupelo Brown Bag Ordinance (TBBO) limits possession in contravention of express statutory intent, the TBBO is preempted by statute. Therefore, I must respectfully dissent.

¶25. The TBBO prohibits "consumption" of beverages between 12:00 a.m. and 7:00 a.m., and defines "consumption" as both ingestion and possession. However, the City of Tupelo has elected out of the "dry" provision and has chosen to be a "wet" municipality. Further, it is not up to the city government to regulate when alcoholic beverages are consumed. The Mississippi Legislature clearly has reserved to itself the right to pass laws concerning the possession of alcohol, and its intent precludes the City of Tupelo from passing an ordinance to the contrary, despite the benevolent purposes of the ordinance in question. *See* Miss. Code Ann. § 67-1-7 (possession of alcohol in wet areas subject only to "provisions and restrictions contained in this chapter").

¶26. The time periods envisioned by the statute are left to the Alcoholic Beverage Control Division of the State Tax Commission. While the Division currently says in some instances that no beverages may be sold after 12:00 a.m. and in others that no beverages may be sold after 2:00 a.m., that decision is only within the Division's discretion. By enacting the TBBO, the City of Tupelo is preemptively saying that there will be no drinking between 12:00 a.m. and 7:00 a.m. However, under the authority granted to Tupelo by the majority, the City could just as easily say whatever it wants-- that there will be no drinking between 7:00 p.m. and 12:00 a.m., or at any other time.

¶27. Not only does the Alcoholic Beverage Control Division determine when beverages may be sold **and** consumed, but also § 67-1-7 prevents a municipality like the City from preempting the Division's decision. The Legislature could decide to grant to municipalities the power to determine times when beverages may be sold or consumed, but it has not chosen to do so. The City of Tupelo in this case has overstepped its bounds and tried to legislate, and I dissent to the majority's affirmance of

summary judgment for the City. On the issue of legislative preemption, this case should be reversed.

**SULLIVAN, P.J., JOINS THIS OPINION.**