# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CC-02302-SCT

*A&F PROPERTIES, LLC*

*v.*

*MADISON COUNTY BOARD OF SUPERVISORS,*
*LAKE CAROLINE, INC. AND LAKE CAROLINE*
*OWNERS ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/08/2004 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | G. TODD BURWELL |
| | WILLIAM LARRY LATHAM |
| ATTORNEYS FOR APPELLEES: | ROBERT RICHARD CIRILLI, JR. |
| | EDMUND L. BRUNINI, JR. |
| | THOMAS A. COOK |
| | LISA MICHELE McCAIN |
| | STEVEN H. SMITH |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 06/29/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     On July 14, 1989, following public notice and a public hearing, the Madison County Board of Supervisors ("Board") adopted the petition of Lake Caroline, Inc. ("LCI") to have 3,047 acres of property rezoned from A-1 Agricultural Classification to P-1 Planned Unit Development District Classification.   On September 27, 1995, LCI and A&F Properties, LLC ("AFP") entered into a Contract wherein LCI agreed to sell 154 acres within the Lake Caroline

Planned Unit Development ("PUD") to AFP for ten ($10) dollars.[1] As additional consideration, AFP agreed to construct "an eighteen (18) hole semi-private golf course" on the subject property. Regarding the golf course, the Contract provided that the property must be used and maintained as a golf course for ten (10) years from December 31, 1996. Moreover, LCI contractually agreed "not to compete with [AFP]" during that period in any golf course operation within the Lake Caroline development "so long as [AFP] operates a golf course." Finally, the Contract also provided that "[i]f [AFP] should desire to *sell* the Golf Course during the first seven (7) years, [LCI] ... shall be given a right of first refusal to purchase the golf course ... ." (Emphasis added). On November 3, 1995, LCI conveyed the property to AFP by warranty deed. In addition to reiterating portions of the Contract regarding restrictions on the use and transfer of the property as a golf course, the Warranty Deed provided that, "[t]he warranty of this conveyance is made subject to ... (2) All applicable zoning ordinances of the governmental authority having jurisdiction over the herein conveyed property." In 1996, AFP developed the 154 acres as a golf course within the PUD.

¶2. At some point after June 26, 1989, the 1989 Master Plan for the Lake Caroline PUD could not be found in the Madison County records.[2] In 1998, the Board adopted and duly recorded a different Master Plan ("1998 Master Plan") and declared that all *future* actions affecting development within the PUD must be in conformity with it. Like the 1989 Master

---

[1] In addition to the 154 acres conveyed to AFP, LCI agreed to convey an additional ten (10) residential subdivision lots to AFP, to be developed by LCI.

[2] According to Madison County Zoning Administrator Brad Sellers, "there was no Master Site Plan on file in my office and one could not be found in the Madison County Chancery Clerk's office for the Lake Caroline Planned Unit Development ... ."

2

Plan, the 1998 Master Plan provided that "the developer reserves the right, in its sole discretion, to alter or amend the uses and locations illustrated on this plan." Unlike the 1989 Master Plan, the 1998 Master Plan illustrated a golf course as an amenity within the PUD. The 1998 Master Plan was prepared, filed, and adopted without the knowledge or involvement of AFP, and again unlike 1989, there was neither public notice, nor a public hearing regarding its adoption by the Board. On February 22, 2001, the 1998 Master Plan was allegedly[3] amended, adding 217 small residential lots ("2001 Master Plan"), without public notice or a public hearing. On January 8, 2003, the Master Plan was again allegedly[4] amended, providing for the addition of six (6) commercial lots ("2003 Master Plan"), once again without public notice or a public hearing.

¶3. On September 1, 2003, AFP advised the Board of its intention to convert the golf course into a residential subdivision. AFP asserted that the golf course was not profitable and was not being used by residents of the Lake Caroline PUD.[5] On September 9, 2003, Madison County Zoning Administrator Brad Sellers sent a letter to AFP stating that the golf course is zoned as a PUD and "[a]ny changes planned therein must be approved by the [Board] through an amendment to the Master Development Plan." Up to this point, AFP alleges that it was unaware of any Master Plan for the PUD other than the 1989 Master Plan. On November 7, 2003, AFP filed a request asking the Board to hear its proposal to amend the Lake Caroline

---

[3]No evidence can be found in the record of Board minutes authorizing this amendment or new Master Plan.

[4]*See* footnote 3.

[5]Specifically, AFP claimed that only 22 of 300 homeowners within the Lake Caroline development were members of the golf course.

Master Plan to allow AFP to change the use of its property from a golf course to a residential subdivision. Unlike with the 1998 substitution and the 2001 and January 2003 alleged amendments, the Board refused to consider AFP's request without public notice and a public hearing.[6] On December 12, 2003, a public hearing was held by the Board regarding AFP's request. After lengthy argument from AFP, LCI, and LCOA, a transcript of the hearing reveals that the Board unanimously voted to table AFP's request and *not reconsider the matter before November 2006*; and its decision was duly recorded in the Board's minutes. This action of the Board was not appealed.

¶4. The composition of the Board changed in January 2004 as the result of elections the prior year. Despite the Board's December 12, 2003, ruling, and without seeking to rescind that ruling, AFP re-filed its prior request on March 26, 2004, for the newly-constituted Board to hear and consider the proposed amendment to the Lake Caroline Master Plan. The newly-constituted Board granted AFP's public hearing request. At an April 23, 2004, public hearing, the Board received and considered argument, testimony, and documentary evidence. Significantly, LCI and the Lake Caroline Owners Association ("LCOA") argued that the hearing should be barred under the doctrines of res judicata and equitable estoppel by virtue of its substantive similarity to the December 12, 2003, hearing. They claimed that the Board's prior ruling that the request was premature applied until November 2006. A board member offered

---

[6]According to Brad Sellers, "[t]he language in the zoning ordinance says it is ambiguous ... . The procedure that we have followed in amendments to Master Plans have not been [to my] notice public hearings. They've simply prepared the amendment that they've proposed and presented it to the Board of Supervisors at a regular scheduled hearing." The public notice and public hearing in this situation was "at the request of the Board," effectively creating a legal requirement which was previously non-existent.

a motion to table consideration of the matter until December 2006, but the motion died for lack of a second. Thereafter, another Board member offered a motion to deny AFP's request. That motion was seconded. After discussion, the Board unanimously voted to deny AFP's request to amend the Lake Caroline Master Plan, which was duly recorded in the minutes of said meeting.

¶5. On May 3, 2004, AFP filed its Notice of Appeal and Bill of Exceptions, appealing the Board's denial of its request to amend the Lake Caroline Master Plan. On October 25, 2004, the Opinion and Order of the Circuit Court of Madison County affirmed the Board's denial of AFP's request. The circuit court found, inter alia, the Board's denial could be justified insofar as any decision the Board rendered for AFP would be *premature*, as the LCI-AFP Contract required the golf course to remain functional *until December 31, 2006*. On November 8, 2004, the Final Judgment of the Circuit Court of Madison County, affirming the denial of AFP's request to amend, was entered. On November 16, 2004, AFP filed its Notice of Appeal against the Board, LCI, and LCOA ("Appellees"), appealing the Final Judgment of the Circuit Court of Madison County. Specifically, AFP seeks approval of its request to amend the Master Plan and a remand of its request for approval of its development or site plan to the Board for consideration and action in accordance with the Madison County Zoning Ordinance.

## STANDARD OF REVIEW

¶6. "The standard of review of an order of a Board of Supervisors is the same standard which applies in appeals from the decisions of administrative agencies." *Ladner v. Harrison County Bd. of Supervisors*, 793 So. 2d 637, 638 (Miss. 2001) (citing *Barnes v. Bd. of Supervisors, DeSoto County*, 553 So. 2d 508, 511 (Miss. 1989)). The decision of the Board

5

will not be disturbed unless its order "was unsupported by substantial evidence; was arbitrary or capricious; was beyond the [Board's] scope or powers; or violated the constitutional or statutory rights of the aggrieved party." *Id*. (citing **Bd. of Law Enforcement Officers Standards & Training v. Butler**, 672 So. 2d 1196, 1199 (Miss. 1996)) (emphasis added). As to questions of law, however, the Board's decision will be reviewed de novo. *See **Harrah's Vicksburg Corp. v. Pennebaker***, 812 So. 2d 163, 170 (Miss. 2001).

**ANALYSIS**

¶7.     AFP raised, and the Board and LCI responded to, the following issues:

(1)Was the Board's denial of AFP's Request to Amend Caroline Master Plan and Approve Residential Development supported by substantial evidence?
(2)Was the Board's denial of the Request arbitrary and capricious?
(3)Was the Board's denial of the Request a violation of AFP's due process rights?
(4)Was the Board's denial of the Request a violation of AFP's equal protection rights?
(5)Did the Board's denial of the Request exceed the Board's legislative authority as set forth by the Madison County Zoning Ordinance?
(6)Was the Board's denial of the Request contrary to the Ordinance and therefore unlawful?
(7)Did the Circuit Court of Madison County, Mississippi err or abuse its discretion in affirming the denial of the Request filed by AFP?

¶8.     LCOA presents the issues as follows:

(1)AFP had no legal right/"standing" to amend the Lake Caroline Planned Unit Development.
(2)AFP's Request to Amend the Lake Caroline PUD was "premature" and contractually prohibited.
(3)The Lake Caroline PUD was officially and properly approved by the Board on February 25, 1998, and cannot now be collaterally attacked.
(4)AFP failed and refused to comply with Sections 402.9-1 - 402.9-6, Madison County Zoning Ordinances.
(5)AFP was "equitably estopped" from seeking/granting the relief requested by AFP.

6

¶9.    This Court finds that Appellant Issue (7) and Appellee LCOA Issue (2) are dispositive. Simply stated, was AFP's Request to Amend Caroline Master Plan and Approve Residential Development premature, and if answered in the affirmative, would the Board's denial of the Request, as affirmed by the Circuit Court of Madison County, likewise be premature?

¶10.    The Circuit Court of Madison County, in its Opinion and Order, properly found that "interpretation of the golf course agreement is at the core of this matter." Moreover, the circuit court determined that "given the pending and/or impending litigation between the parties ... AFP's request was, in fact, premature before such litigation had been finally concluded." The circuit court also found:

> [w]hile the Board is called on to make many decisions on many issues, it is not the body to adjudicate the rights and responsibilities of AFP and the Developer under the golf course agreement or any assertions of rights in relation thereto by the Homeowners, or any claims it previously violated AFP's constitutional rights.

In short, "that litigation, not a Board meeting, which is summary in nature, is the vehicle to determine the duties of all the parties as to such future." Only following that litigation or upon expiration of the contract could an amendment to the Master Plan avoid being premature. As such, the circuit court concluded that "[t]he Board's denial can be upheld on the basis that any decision by it that far from December 31, 2006, and/or prior to the other parties sorting out their various rights and responsibilities under the golf course agreement, would be premature." Appellees assert that AFP's request was not only premature, but contractually prohibited by virtue of the plain language of the LCI-AFP Contract. In short, they contend AFP is contractually required to continue using the property as a golf course through December 31, 2006.

7

¶11. "The standard of review for questions concerning the construction of a contract are questions of law that are committed to the court rather than to the fact-finder." *Ferrara v. Walters*, 919 So. 2d 876, 881 (Miss. 2005) (citing *Warwick v. Gautier Utility Dist.*, 738 So. 2d 212, 215 (Miss. 1999); *Miss. State Highway Comm'n v. Patterson Enters., Ltd.*, 627 So. 2d 261, 263 (Miss. 1993)). Questions of law are reviewed by this Court de novo. *See Biddix v. McConnell*, 911 So. 2d 468, 471 (Miss. 2005) (citing *G.B. "Boots" Smith Constr. Corp. v. Cobb*, 860 So. 2d 774, 776-77 (Miss. 2003)). Only if the contract is deemed ambiguous will the "subsequent interpretation" involve "a finding of fact." *Id*. (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 269 (Miss. 2003)).

¶12. "Our law requires this Court to accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." *Ferrara*, 919 So. 2d at 882 (citations omitted). In other words, "[l]egal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (citations omitted). In applying the "four corners" test, "[o]ur concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Id*. (citing *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42-43 (Miss. 1992)). "Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties true intent." *Id*. at 752-53 (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990)). In short, this Court "will not rewrite or deem a contract ambiguous where the language

is clear and indicative of its contents." ***Miss. Farm Bureau Mut. Ins. Co. v. Walters***, 908 So. 2d 765, 769 (Miss. 2005) (citing ***State Auto. Mut. Ins. Co. v. Glover***, 253 Miss. 477, 176 So. 2d 256, 258 (1965)).

¶13.   Here, the plain, unambiguous language of the LCI-AFP Contract mandates that the property be maintained as a golf course until December 31, 2006.  Prior to December 31, 2006, AFP is contractually bound to either maintain the property as a golf course or sell it to another who will maintain it as such.  To require AFP to submit to the provisions of the contract which it freely entered into with LCI respects the plain language of the contract.  *See* ***Walters***, 908 So. 2d at 769.

¶14.   The circuit court properly identified the prematurity issue.  However, the circuit court failed to address the significance of the Board's December 2003 ruling, which was *not appealed*.  Rather than appealing, AFP simply ignored the prior ruling, and filed another request with the newly constituted Board three months later.  At the subsequent hearing, LCOA properly argued to the Board that res judicata should control.  "Under Mississippi law, res judicata or collateral estoppel precludes relitigation of administrative decisions." ***Smith v. Univ. of Miss.***, 797 So. 2d 956, 963 (Miss. 2001) (involving a terminated state employee who failed to appeal the dismissal decision of the Personnel Action Review Board to the circuit court by writ of certiorari as mandated by Miss. Code Ann. Sections 11-51-93 and -95).  *See also* ***Zimmerman v. Three Rivers Planning & Dev. Dist.***, 747 So. 2d 853, 861 (Miss. Ct. App. 1999) (involving the failure to file an appeal of the Permit Board's decision within twenty days after it was entered into the books as mandated by Miss. Code Ann. Section 49-17-29).  According to ***Zimmerman***, "[o]nce an agency decision is made and the decision remains

unappealed beyond the time to appeal, it is barred by administrative res judicata or collateral estoppel." 747 So. 2d at 861 (citing *Hood v. Miss. Dep't of Wildlife Conservation*, 571 So. 2d 263, 268 (Miss. 1990)). In denying AFP's request, the Board erroneously ignored its binding initial ruling of prematurity. In failing to acknowledge that initial ruling of the Board, which effectively renders this action non-justiciable until after December 31, 2006, the circuit court's prematurity analysis was incomplete.

¶15. Only after December 31, 2006, when AFP's contractual obligation to maintain the golf course expires, is AFP free to petition the Board regarding other uses for the subject property. Until that time, when this action ripens, this Court has no power to issue an advisory opinion. *See In re Summers*, 325 U.S. 561, 567, 65 S.Ct. 1307, 89 L. Ed. 491 (1945) (in federal appellate courts, the case or controversy requirement mandates "an actual controversy over an issue, not a desire for an abstract declaration of the law."); *Furstein v. Hill*, 218 Conn. 610, 627, 590 A.2d 939 (1991) (at the state level, as well, "the existence of an actual controversy is an essential prerequisite to appellate jurisdiction."); *Allred v. Webb*, 641 So. 2d 1218, 1220 (Miss. 1994) (the Mississippi Supreme Court "[has] no power to issue advisory opinions."); *Insured Savs. & Loan Ass'n v. State*, 242 Miss. 547, 554, 135 So. 2d 703, 706 (1961) ("The Supreme Court has no power to render advisory opinions."). Therefore, the circuit court's affirmance of the Board's denial of AFP's request was proper, but only because AFP's request was premature contractually and barred by virtue of the Board's initial ruling.

**CONCLUSION**

¶16.    For these reasons, this Court finds that the circuit court was correct in rejecting AFP's request for relief, but not for the stated reasons. This Court concludes that AFP's request is premature until the relevant provision of the LCI-AFP Contract expires on December 31, 2006. Therefore, the circuit court's judgment is affirmed.

¶17.    **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. DICKINSON, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**