# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00243-SCT

*WENDY RYALS AND RONALD PERRY*

*v.*

*BOARD OF SUPERVISORS OF PIKE COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2008 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | ALFRED L. FELDER |
| ATTORNEYS FOR APPELLEE: | WAYNE DOWDY |
| | DUNBAR DOWDY WATT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 08/19/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Appellants Wendy Ryals and Ronald Perry each own inner tube, canoe, and kayak rental businesses on the Bogue Chitto River and Topisaw Creek in Pike County.  After the Pike County Board of Supervisors enacted an ordinance prohibiting the possession and consumption of alcoholic beverages on portions of the two waterways, Ryals and Perry filed a bill of exceptions in the Pike County Circuit Court.  Aggrieved by the circuit court's dismissal of the bill of exceptions, they have appealed to this Court.

**FACTS AND PROCEEDINGS**

¶2.     Topisaw Creek is a tributary of the Bogue Chitto (Choctaw for "big creek") River. The river itself begins in Lincoln County, Mississippi, just south of Brookhaven, at the confluence of the East Bogue Chitto and the West Bogue Chitto Rivers. The main stem of the Bogue Chitto meanders southeasterly through Pike and Walthall Counties, then flows into Louisiana, where it merges with the Pearl River. *Ryals v. Pigott*, 580 So. 2d 1140, 1144-45 (Miss. 1990). Recreationists enjoy floating Topisaw Creek and the Bogue Chitto River on inner tubes, canoes, and other small watercraft. Historically, some of the boaters and floaters have possessed and consumed alcoholic beverages as they traversed these pristine waters.

¶3.     Following years of complaints from riparian land owners and law enforcement officers of problems allegedly related to alcohol consumption on these waterways, including excessive littering, lewd behavior, disturbances of the peace, use of profane language, and possession and consumption of alcohol by minors, the Pike County Board of Supervisors conducted a public hearing at which residents of Pike County were afforded the opportunity to speak for or against a proposed ban on the consumption and possession of alcoholic beverages on portions of Topisaw Creek and the Bogue Chitto River. A month after the hearing, the board unanimously enacted an ordinance prohibiting the possession and the consumption of alcohol beverages, namely "wine, beer, ale, or other liquid containing alcoholic (sic), intended for beverage purposes." The ordinance reads, in relevant part:

> It is unlawful for any person to possess or consume alcoholic beverages of any type or description, on the waters of the Bogue Chitto River from the Holmesville Bridge downstream to the water park, and on the Topisaw Creek

2

from the Leatherwood Bridge downstream to its place of merger into the waters of the Bogue Chitto.

The ordinance notes that, prior to the enactment of the ordinance, the board had become aware of numerous drownings and other serious accidents resulting in bodily injury caused by excessive consumption of alcoholic beverages.

¶4.     Appellants Ryals and Perry (hereinafter "business owners") own business enterprises which rent inner tubes, canoes, and kayaks to customers for use on the Bogue Chitto River and Topisaw Creek.  Believing themselves aggrieved by the enactment of the ordinance, the business owners filed a Notice of Appeal with the Pike County Circuit Court, attaching a copy of the ordinance and a proposed Bill of Exceptions.  After the board's president and the board's attorney modified and signed the Bill of Exceptions, the board filed its Response in Nature of Answer to Notice of Appeal, and a hearing was held on the Bill of Exceptions in the Pike County Circuit Court.[1]

¶5.     At the hearing, Pike County Sheriff Mark B. Shepherd testified that numerous persons owning land adjacent to the Bogue Chitto River and Topisaw Creek had reported alleged

---

[1]Mississippi Code Section 11-51-75 (Rev. 2002) provides that the circuit court sits as an appellate court in cases presented by bills of exceptions. *See, e.g.*, **City of Greenwood v. Henderson**, 84 Miss. 802, 37 So. 745 (1905) (appeal on bill of exceptions "must be heard and decided on the record so made, and cannot be considered on oral testimony"); *but see, e.g.*, **Electronic Data Sys. v. Miss. Div. Of Medicaid**, 853 So. 2d 1192, 1200-02 (Miss. 2003) (original action commenced in chancery court appropriately treated as administrative appeal, although chancellor conducted two-day hearing in which sworn testimony and exhibits were received into evidence).  Here, the board presented eight witnesses at the circuit court hearing, and the business owners called five. Given that neither party contends that the circuit court erred in conducting an evidentiary hearing, this Court will not address the propriety of the circuit court's having conducted such a hearing in the case at hand.

3

alcohol-related offenses over the years, including minors in possession of alcohol and public drunkenness. Sheriff Shepherd also testified that one alcohol-related drowning had occurred in 2003, and that other alcohol-related injuries commonly had occurred on the two streams.

¶6. Master Sergeant Troy Travis of the Mississippi Highway Safety Patrol testified that he had worked at numerous drivers' license checkpoints in the area, and that these exercises had resulted in multiple arrests of intoxicated drivers allegedly leaving the Bogue Chitto Water Park, a frequently used exit point of the Bogue Chitto River. Master Sergeant Travis averred that many of the intoxicated drivers had informed him that their intoxication was the result of their having consumed alcohol while floating down the Bogue Chitto River and/or Topisaw Creek.

¶7. Lane Ball, an administrator of the Mississippi Department of Wildlife, Fisheries and Parks, testified that in 2001, that department had received complaints about an alleged drinking and trespassing problem on the Bogue Chitto River. Ball testified that after the department had begun investigating activities on the river, it became apparent that the great number of infractions being committed there prevented the department from patrolling the area adequately. Ball also presented statistical information on the number of citations issued for public drunkenness and for minors in possession of alcoholic beverages, noting that, between 2000 and 2005, the number of citations totaled 1,381, with 143 of those citations having been for minors in possession of alcoholic beverages, and twenty-one of the 1,381 citations having been for public intoxication. Ball also opined that the vast majority of other

4

offenses, including trespassing and possession of controlled substances, had been linked to alcohol consumption on the two streams.

¶8. The business owners also testified at the circuit court hearing, and both averred that the amount of commercial activity on the streams had been reduced drastically by the enactment of the ordinance. Ryals said that she had suffered a 90% loss of business since the ban of alcoholic beverages had become enforceable, and Perry testified that, prior to the ban, he had been renting five or six hundred tubes per day, and that, after the ban had become enforceable, his tube rentals had been reduced to less than one hundred tubes per day.

¶9. Following the hearing, the circuit court issued a Memorandum Opinion and Order, upholding the ordinance and finding that the ordinance "is neither in conflict with a State statutory scheme, nor arbitrary and capricious in its application or enforcement." After the business owners' post-trial motions were denied by the trial court, they appealed to this Court.

## ISSUES

¶10. The issues that this Court must address are: (1) whether the Board of Supervisors has exceeded its statutory authority in passing an ordinance prohibiting the (a) possession and (b) consumption of alcoholic beverages on portions of the Bogue Chitto River and Topisaw Creek, and (2) whether the enactment of the ordinance was arbitrary and capricious or unsupported by substantial evidence.

## STANDARD OF REVIEW

5

¶11.   "The standard of review of an order of a Board of Supervisors is the same standard

which applies in appeals from the decisions of administrative agencies." *A & F Properties,*

*LLC v. Madison County Bd. of Supervisors*, 933 So. 2d 296, 299-300 (Miss. 2006) (citing

*Ladner v. Harrison County Bd. of Supervisors*, 793 So. 2d 637, 638 (Miss. 2001) (citing

*Barnes v. Bd. of Supervisors, DeSoto County*, 553 So. 2d 508, 511 (Miss. 1989))).  "The

decision of the board will not be disturbed unless its order 'was unsupported by substantial

evidence; was arbitrary or capricious; was beyond the [board's] scope or powers; or violated

constitutional or statutory rights of the aggrieved party.'" *Id*. at 300 (citing *Bd. of Law*

*Enforcement Officers Standards and Training v. Butler*, 672 So. 2d 1196, 1199 (Miss.

1996)).  The board's decisions related to questions of law or statutory interpretation will be

reviewed de novo. *Id*.; *Nelson v. City of Horn Lake ex. rel. Bd. of Aldermen*, 968 So. 2d

938, 942 (Miss. 2007).

## ANALYSIS

*(I) Whether the Board of Supervisors exceeded its statutory authority in prohibiting the*
*possession and the consumption of alcoholic beverages on portions of the Bogue Chitto River*
*and Topisaw Creek.*

> The board of supervisors of any county shall have the power to adopt any
> orders, resolutions or ordinances with respect to county affairs, property and
> finances, for which no specific provision has been made by general law and
> which are not inconsistent with the Mississippi Constitution, the Mississippi
> Code of 1972, or any other statute or law of the State of Mississippi.

Miss. Code Ann. § 19-3-40(1) (Rev. 2003).

¶12.   If a county or municipality passes an ordinance which stands in opposition to the law

as pronounced by the legislature, the ordinance, to the extent that it contradicts state law, will

6

be found void by this Court, as the laws of this state supersede any and all local ordinances which contradict legislative enactments. *Id*. (citing **Watkins v. Navarrette**, 227 So. 2d 853, 855 (Miss. 1969)); **Collins v. City of Hazlehurst**, 709 So. 2d 408, 411 (Miss. 1997) (citing **City of Amory v. Yielding**, 34 So. 2d 726, 728 (Miss. 1948)). Accordingly, the question this Court must answer is whether state statutory enactments contradict the Pike County ordinance, which criminalizes the possession and consumption of alcoholic beverages on the specified portions of the Bogue Chitto River and Topisaw Creek.

*(a) Possession*

¶13.    With regard to the possession of alcoholic beverages containing more than five percent alcohol by weight, the Mississippi Code provides:

> . . . . the manufacture, sale, distribution, *possession* and transportation of alcoholic beverages *shall be lawful*, subject to the restrictions hereinafter imposed, in those counties and municipalities of this state in which, at a local option election called and held for that purpose under the provisions of this chapter, a majority of the qualified electors voting in such election shall vote in favor thereof.

Miss. Code Ann. §§ 67-1-5, 67-1-7 (Rev. 2005) (emphasis added).

¶14.    As for beer and light wines, the Mississippi Code provides that, unless a majority of the duly qualified electors votes to prohibit the sale or possession of such beverages, "*[i]t shall be lawful* . . . in this state to transport, store, sell, distribute, *possess*, receive, and/or manufacture wine and beer of an alcoholic content of not more than five percent (5%) by weight. Miss. Code Ann. §§ 67-3-5, 67-3-7(1), 67-3-13(1) (Rev. 2005) (emphasis added).

7

¶15.    Thus, Mississippi statutes explicitly provide for the lawful possession of alcoholic beverages in this state.  Unless the voters of a county or municipality elect to prohibit the possession of beer or light wines within the political subdivision (county or municipality), possession of those beverages is lawful. Miss. Code Ann. §§ 67-3-5, 67-3-7(1), (2) (Rev. 2005).  If a majority of the qualified electors votes in favor of legalizing the possession of alcoholic beverages containing more than five percent of alcohol by weight, Mississippi Code Section 67-1-7(1) makes it lawful to possess those beverages in that county or municipality. Miss. Code Ann. § 67-1-7(1) (Rev. 2005).

¶16.    In this case, the record reveals that the residents of Pike County have not voted to prohibit the sale and possession of beer and light wines, and that the possession of those beverages has been legal there since 1934, when the legislature ended the era of prohibition of those beverages in Mississippi.  The record also establishes that, in 1966, following the effective date of the Local Option Alcoholic Beverage Control Law, a majority of the electors in Pike County voted to legalize the manufacture, sale, distribution, possession, and transportation of alcoholic beverages containing more than five percent alcohol by weight. Thus, Pike County is a "wet" county for beer, light wine, and liquor, and controlling legislative enactments provide that a person may not be prosecuted merely for possessing an unopened alcoholic beverage in Pike County, with very few exceptions.[2]

---

[2] A nonexhaustive list of reasons for which a person may suffer legal consequences for mere  possession of an unopened alcoholic beverage in Pike County includes: 1) that he or she is under the age of twenty-one years, *see* Miss. Code Ann. §§ 67-3-70(1), 67-1-81 (Rev. 2005); 2) that he or she possesses the beverage on the premises of any correctional

¶17. Because the Pike County ordinance makes it unlawful to possess alcoholic beverages on portions of the Bogue Chitto River and Topisaw Creek, the ordinance stands in opposition to Code Sections 67-1-7 and 67-3-5, which make it legal to possess alcoholic beverages in Pike County, subject only to several statutory exceptions. Accordingly, the possession provision is void, as "[i]t is well established that in any conflict between an ordinance and a statute, the latter must prevail." **Collins**, 709 So. 2d at 411 (quoting **Watkins**, 227 So. 2d at 855).

¶18. If the Pike County Board of Supervisors has the authority to prohibit the possession of alcoholic beverages on Topisaw Creek and the Bogue Chitto River, which it does not, nothing prevents the board's imposing prohibition anywhere or everywhere in the county. This would amount to a majority of a five-person board's having the power to override the will of a majority of the county's voters. Such is clearly contrary to this state's established law. The Pike County Board of Supervisors, however well intentioned, has exceeded its authority in this instance.

*(b) Consumption*

¶19. The provision of the ordinance prohibiting consumption of alcoholic beverages on portions of the two specified waterways is a different creature. Mississippi Code Sections 67-1-7 and 67-3-65 expressly make it legal to *possess* alcoholic beverages within Pike

---

facility within the state, *see* Miss. Code Ann. § 97-31-35 (Rev. 2006); or 3) that the possession of an alcoholic beverage violates a term or condition of his or her probationary or post-release supervision status, *see* Miss. Code Ann. § 47-7-35 (Miss. 2004).

County; however, these statutes are silent on the issue of *consumption*. Moreover, no other Mississippi statute announces the legislature's will to regulate the matter of consumption of alcoholic beverages in wet counties.

¶20. In *Maynard v. City of Tupelo*, this Court considered a Tupelo municipal ordinance which prohibited "commercial establishments in Tupelo from allowing consumption of alcohol between the hours of midnight and 7 a.m." *Maynard v. City of Tupelo*, 691 So. 2d 385, 386 (Miss. 1997). The ordinance did not penalize individuals who possessed alcohol, but limited the penalties to the commercial establishments which allowed their patrons to consume alcohol or possess open containers on such establishments' premises. *Id.* at 388. In upholding the ordinance, this Court noted:

> The Legislature has not clearly expressed an intent that the *consumption of alcoholic beverages, as opposed to the mere possession thereof*, be permitted without limitation in wet areas. Absent such a clear expression of intent . . . this Court will allow the ordinance to stand.

*Id.* (emphasis added).

¶21. Because the legislature has not spoken directly on the issue of consumption of alcoholic beverages in wet counties, the Pike County provision relating to consumption of alcoholic beverages on the specified portions of the two streams does not contradict any state statute; therefore, the Pike County Board of Supervisors was within the power granted to it by Section 19-3-40(1) to enact and enforce that provision of the ordinance. Miss. Code Ann. § 19-3-40(1) (Rev. 2003).

*(II) Whether the Board of Supervisors' adopting the ordinance was arbitrary and capricious or unsupported by substantial evidence.*

10

¶22. As noted above, "[t]he decision of the Board will not be disturbed unless its order 'was unsupported by substantial evidence; was arbitrary or capricious; was beyond the [Board's] scope or powers; or violated the constitutional or statutory rights of the aggrieved party.'" *A & F Properties, LLC*, 933 So. 2d at 299-300 (citing *Ladner v. Harrison County Bd. of Supervisors*, 793 So. 2d 637, 638 (Miss. 2001) (citing *Barnes v. Bd. of Supervisors, DeSoto County*, 553 So. 2d 508, 511 (Miss. 1989))). A "decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone. An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Limbert v. Miss. Univ. for Women Alumnae Ass'n, Inc.*, 998 So. 2d 993, 1000 (Miss. 2008) (quoting *Miss. Dep't of Human Servs. v. McNeel*, 869 So. 2d 1013, 1018 (Miss. 2004); *Miss. State Dep't of Health v. Natchez*, 743 So. 2d 973, 977 (Miss. 1999)).

¶23. Here, the record reveals that, prior to enacting the ordinance, the Pike County Board of Supervisors had been confronted with a plague of illegal activity and public nuisances on the Bogue Chitto River and Topisaw Creek, including littering, drug possession, public profanity, indecent exposure, disorderly conduct, trespassing, minors in possession of alcohol, and public drunkenness. During a relatively brief number of years, numerous alcohol-related arrests had been made. Peace officers averred that, because of the number of infractions being committed on the two streams, officers were unable to patrol the vicinity in a manner that ensured the safety of those visiting the river and the creek. Other Pike County residents and land owners testified at the board's hearing and at the circuit court

11

hearing that intoxicated river and creek goers commonly had trespassed on their land, and that lewd verbal and sexual conduct frequently had been committed by drunk patrons of the waterways.

¶24. Given the evidence with which it was presented, it cannot be said that the board's decision to prohibit the *consumption* of alcoholic beverages on the Bogue Chitto River and Topisaw Creek was without reason, or that the board lacked an understanding of the surrounding facts. *Id.* That being the case, the adoption of the disputed ordinance was not arbitrary or capricious, and this issue is without merit.

## CONCLUSION

¶25. To the extent that the Pike County ordinance undertakes to prohibit the possession of alcoholic beverages on the Bogue Chitto and Topisaw waterways, it is hereby declared null and void, as it stands in opposition to Mississippi Code Sections 67-1-7 and 67-3-5, which make it legal to possess alcoholic beverages everywhere in Pike County, except in those places statutorily specified. *See supra* n.2. The ordinance's ban of alcohol consumption, however, is valid and enforceable, and shall remain in full force and effect, unless and until it is lawfully repealed or modified by the Board of Supervisors, because this portion of the ordinance does not conflict with state law, and because the board did not act arbitrarily or capriciously in its enactment.

¶26. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**GRAVES, P.J., DICKINSON, LAMAR AND CHANDLER, JJ., CONCUR. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND PIERCE, J. RANDOLPH, J., NOT PARTICIPATING.**

12

**CARLSON, PRESIDING JUSTICE, DISSENTING:**

¶27. Because I would affirm *in toto* the Pike County Board of Supervisors' enactment of an ordinance prohibiting not only the *consumption* but also the *possession*, of alcoholic beverages on portions of the Bogue Chitto River and Topisaw Creek, and because the majority declares null and void that portion of the Board's ordinance concerning the *possession* of alcoholic beverages on designated portions of the two waterways, I respectfully dissent.

¶28. Although the majority appropriately cites *Maynard v. City of Tupelo*, 691 So. 2d 385 (Miss. 1997), in support of its affirmance of the Board's enactment of an ordinance prohibiting *consumption* of alcoholic beverages on designated portions of the two waterways, I likewise cite *Maynard* in support of my position that the Board also had authority to include in its ordinance a ban on the *possession* of alcoholic beverages on portions of the Bogue Chitto River and Topisaw Creek.

¶29. Ultimately, the issue is whether the ordinance conflicts with state statutes legalizing *possession* of alcohol in counties that have opted to be "wet" counties.

¶30. The aggrieved business owners, Wendy Ryals and Ronald Perry (business owners), argue that, since possession of light wines and beer, as well as possession of alcoholic beverages greater than five-percent alcohol, is legal in Pike County, then the Board's prohibition on possession of all forms of alcohol is contrary to Section 67-1-7 of the Local Option Beverage Control Law, and Section 67-3-5 of the Light Wines and Beer Chapter. *See* Miss. Code Ann. §§ 67-1-7, 67-3-5 (Rev. 2005). According to the business owners, because

13

the ordinance conflicts with state statutes, "the latter must prevail." ***City of Amory v.***

***Yielding***, 203 Miss. 265, 34 So. 2d 726 (1948).

¶31.    Mississippi Code Section 67-1-7[3] states, in pertinent part:

> The manufacture, sale, distribution, ***possession*** and transportation ***of alcoholic beverages shall be lawful***, subject to the restrictions hereinafter imposed, in those counties and municipalities of this state in which, at a local option election called and held for that purpose under the provisions of this chapter, a majority of the qualified electors voting in such election shall vote in favor thereof.

Miss. Code Ann. § 67-1-7 (Rev. 2005) (emphasis added). Mississippi Code Section 67-3-5

(Rev. 2005) states, in pertinent part:

> ***It shall be lawful***, subject to the provisions set forth in this chapter, in this state ***to*** transport, store, sell, distribute, ***possess,*** receive, and/or manufacture ***wine and beer*** of an alcoholic content of not more than five percent (5%) by weight . . . .

Miss. Code Ann. § 67-3-5 (Rev. 2005) (emphasis added). As correctly noted by the majority,

Pike County has permitted the sale and possession of light wines and beer since the

Legislature legalized their sale and possession in 1934. The County has opted to be a "wet"

---

[3]The business owners also cite an excerpt from Section 67-1-11(4), which essentially reads the same as 67-1-7. Section 67-1-11(4) states, in pertinent part:

> If, in such election, a majority of the qualified electors participating therein shall vote in favor of the proposition, this chapter shall become applicable and operative in such county and the manufacture, sale, distribution and possession of alcoholic beverages therein shall be lawful to the extent and in the manner permitted hereby.

Miss. Code Ann. § 67-1-11(4) (Rev. 2005).

14

county since 1966 when the Legislature passed the Local Option Beverage Control Law. *See* Miss. Code Ann. §§ 67-1-1 to 67-1-99 (Rev. 2005).

¶32.    In *Maynard*, this Court addressed the issue of possession. *Maynard*, 691 So. 2d at 388. The Tupelo Brown Bag Ordinance limited its definition of possession to possession of an open container. *Id.* at 387. An open container was defined as "any type of drinking container or in any bottle, can or other container upon which the seal, cork, or cap has been opened." *Id.* The ordinance's provision that prohibited on-premises consumption and possession of open containers during certain hours was found to be a reasonable and necessary means of restricting the consumption of alcoholic beverages. *Id.* "It appears to this Court that an ordinance requiring the city to prove the actual ingestion of alcoholic beverages could be impossible to enforce, and the [ordinance] does in fact allow a citizen to possess alcoholic beverages so long as the beverages are not in open containers as such is defined in the [ordinance]." *Id.*

¶33.    A reading of *Maynard* would appear at first to lend credibility to the business owners' argument that the prohibition of mere possession of alcohol conflicts with Section 67-1-7. However, I find that, looking to the specifics of today's case, when compared to the specific facts of *Maynard*, the purpose of the ordinance would be impossible to realize if Pike County were required to "prove the actual ingestion of alcoholic beverages." *Id*. at 387. Moreover, I find that the ordinance is limited in scope to "the waters of the Bogue Chitto River from the Holmesville Bridge downstream to the water park, and on the Topisaw Creek from the Leatherwood Bridge downstream to its place of merger into the waters of the Bogue Chitto

15

River." These are the very areas where law enforcement officials reported the most misdemeanor violations and the most difficulty in accessing the waterways to enforce the law. The passing of this ordinance obviously is not an attempt by the Board to limit possession on the campgrounds or the water park, or to limit possession of alcohol by those recreating in cabins or homes on the banks of the river or creek, or to penalize those transporting closed containers of alcohol in their cars to the privacy of their own homes. Common sense (sometimes referred to as "just good ole walking-around sense"), tells me that those persons in possession of alcoholic beverage containers – open or otherwise – on the designated areas of the river or creek are in possession of alcohol for the sole purpose of consuming it. Stated differently, it is difficult for me to imagine any occurrence more nonsensical than a person desiring to tube down the Bogue Chitto River from the Holmesville Bridge to the Bogue Chitto Water Park with a six-pack of unopened beer.

¶34. I emphasize here that my position is based on the facts and circumstances peculiar to this particular case, and I would narrowly limit my position to the specific facts of today's case so as to not encourage its use *carte blanche* by municipalities or counties to limit possession of alcoholic beverages in areas that are otherwise "wet."

¶35. Similarly, in ***Collins v. City of Hazlehurst***, 709 So. 2d 408, 411-12 (Miss. 1997), the City of Hazlehurst's ordinance prohibiting minors from entering an establishment that sold light wine or beer was argued to be in direct contravention to Mississippi Code Section 67-3-53(e), which prohibits permit holders authorized to sell beer and light wine to allow minors to frequent their establishments unless the minors are "accompanied by parents or

16

guardians, or under proper supervision." *See* Miss. Code Ann. § 67-3-53(e) (Rev. 2005).  In *Collins*, despite the conflict in the language of the ordinance with that of the statute, this Court accepted the City's argument that it had an interest in the "welfare and protection of its youth" and in "promoting the public health, morals and safety of those individuals" under twenty-one years of age. *Collins*, 709 So. 2d at 412.  This Court held that the ordinance was not void and that the City was acting within its authority under Section 67-3-65. *Id.* In doing so, the Court stated:

> This Court finds the City correctly adopted its ordinance under the authority of Miss. Code Ann. § 67-3-65. "The police power confers upon the states and local governmental units broad regulatory authority over public health, welfare, and morals." *Davidson v. City of Clinton, Mississippi*, 826 F.2d 1430, 1433 (5th Cir. 1987).

*Id.*

¶36.    Likewise, I find today that the Board was acting within its authority to regulate the public health, morals, and safety of those persons frequenting the Bogue Chitto River and Topisaw Creek. Additionally, the Board of Supervisors has a great interest in protecting its citizens from the threat of intoxicated drivers leaving the Bogue Chitto River and Topisaw Creek by way of the highways and roads of Pike County. Accordingly, in my opinion, the ordinance's prohibition on the possession of alcohol is a valid exercise of the county's police power.

¶37.    For the reasons discussed, I would affirm the Pike County Board of Supervisors' enactment of an ordinance prohibiting the possession and consumption of alcoholic beverages "on the waters of the Bogue Chitto River from the Holmesville Bridge

17

downstream to the water park, and on the Topisaw Creek from the Leatherwood Bridge downstream to its place of merger into the waters of the Bogue Chitto." Because the majority finds otherwise, I respectfully dissent.

**WALLER, C.J., AND PIERCE, J., JOIN THIS OPINION.**