CHANDLER, Justice,
for the Court:
¶ 1. The Forrest County Board of Supervisors (the Board) passed an ordinance requiring that oil and gas facilities within Forrest County be fenced. Delphi Oil, Inc. (Delphi) filed a bill of exceptions and appealed to the Circuit Court of Forrest County, which affirmed the fencing ordinance. Delphi appeals, arguing that, because the regulatory authority of the Mississippi Oil and Gas Board (OGB) preempts any local regulation of oil and gas activity, this Court should invalidate the ordinance. We find that state law does not preempt the fencing ordinance and affirm the circuit court’s order.

FACTS

¶ 2. On October 31, 2009, two teenagers were killed in an explosion at an oil and gas storage tank in Forrest County owned by Delphi. No fence restricted access to this storage tank. In response, the Board entered an order setting a public hearing to discuss a proposed ordinance that would address safety requirements for oil and gas facilities. Notice of this hearing was published in The Hattiesburg American, a local newspaper. After hearing testimony and evidence at the public hearing, the Board concluded that requiring construction of fencing, gates, signage, and locking mechanisms at oil and gas facilities would “help protect private property, prevent physical injury, and otherwise contribute to the public health and safety of the citizens of Forrest County without imposing an undue burden on the owners of such facilities.... ” Accordingly, on September 9, 2010, the Board enacted an ordinance requiring oil and gas facilities located within Forrest County to construct and main *721 tain perimeter fencing at least five feet high and topped with strands of barbed wire. The ordinance also required locked gates and signs indicating the danger of the area. This ordinance was enacted pursuant to Mississippi Code Section 19-3^40, also known as the home rule statute. Miss.Code Ann. § 19-3-40(1) (Rev.2012). The ordinance was amended several times.
¶ 3. Aggrieved, Delphi filed a Bill of Exceptions on September 20, 2010, appealing the fencing ordinance. See Miss.Code Ann. § 11-51-75 (Rev.2002) (providing that the circuit court sits as an appellate court in cases presented by bills of exceptions). Delphi argued that the Board was prohibited from adopting the ordinance because Mississippi Code Section 53-1-17(7) gave the OGB exclusive jurisdiction to regulate property used for oil and gas activities. During the pendency of the appeal, after a hearing, the OGB amended Statewide Rule 6 to revise its requirements for warning signs and to require that all stairways and ladders leading to storage tanks be equipped with a gate restricting access.[1] The OGB issued an order setting out its considerations in adopting the amendments to Rule 6. In the order, the OGB explained that it had considered a requirement that fences be erected around oil and gas wells and related facilities. The OGB stated it had determined that fencing would be inappropriate because, in case of emergency, fences would restrict the ability of workers to flee and first-responders to gain immediate, unfettered access to the facilities, and that fences would unnecessarily restrict the ability of OGB field inspectors to access facilities for inspection purposes.
¶ 4. After hearing arguments from Delphi, the Board, and the OGB,[2] on March 19, 2012, the Circuit Court of Forrest County entered an order affirming the fencing ordinance. The circuit court found that the ordinance was within the Board’s authority to protect the health and safety of county residents. The circuit court found that the fencing requirement could co-exist with the OGB’s statutory charge, duties, and responsibilities.

STANDARD OF REVIEW

¶ 5. This Court will not disturb a decision of a board of supervisors unless the decision “was unsupported by substantial evidence; was arbitrary or capricious; was beyond the [board’s] scope or powers; or violated constitutional or statutory rights of the aggrieved party.” A & F Props., LLC v. Madison County Bd of Supervisors, 933 So.2d 296, 300 (Miss.2006) (citing Bd. of Law Enforcement Officers Standards and Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996)). However, a board of supervisors decision related to a question of law is reviewed de novo. A & F Props., 933 So.2d at 300; Nelson v. City of Horn Lake ex. rel. Board of Aldermen, 968 So.2d 938, 942 (Miss.2007).

DISCUSSION

WHETHER THE FENCING ORDINANCE IS PREEMPTED BY STATE LAW.
¶ 6. The Board contends that its authority to enact the fencing ordinance emanates from the home rule statute, which provides:
[t]he board of supervisors of any county shall have the power to adopt any or *722 ders, resolutions or ordinances with respect to county affairs, property and finances, for which no specific provision has been made by general law and which are not inconsistent with the Mississippi Constitution, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi.
Miss.Code Ann. § 19-3-40(1) (Rev.2012). The Court has held that “[i]f a county or municipality passes an ordinance which stands in opposition to the law as pronounced by the legislature, the ordinance, to the extent that it contradicts state law, will be found void by this Court, as the laws of this state supersede any and all local ordinances which contradict legislative enactments.” Ryals v. Bd. of Supervisors of Pike Co., Miss., 48 So.3d 444, 448 (Miss.2010). When faced with the question of whether a local law is preempted by a legislative enactment, the Court determines whether the ordinance contradicts state statutory law. Id.
¶ 7. When determining issues of state law preemption of local law, this Court looks to whether the local law is inconsistent with state law. See Maynard v. City of Tupelo, 691 So.2d 385, 388 (Miss.1997). In Maynard, the Court held that a local ordinance in Tupelo was not preempted by state law due to the absence of a clearly expressed legislative intent and the presence of strong public policy considerations. Id. at 386. The ordinance in question was a “brown bag” ordinance prohibiting the consumption of alcohol in commercial establishments between the hours of midnight and 7 a.m. Id. It was argued that this ordinance was preempted by Mississippi Code Section 61-1-7 which permits the possession of alcoholic beverages in municipalities which have opted out of the “dry” provisions. Id. at 387. The Court held that it was within the city’s authority to regulate alcoholic beverages within the community under Mississippi Code Section 67-3-65. Id. at 388. The Court further found that the Legislature had not preempted the entire area of law relating to alcohol. Id. We reasoned that the Legislature had not expressed a clear intent to cover the consumption of alcohol since the statute in question mentioned only the possession of alcohol. Id. We were “unwilling to read the statute more expansively than it [was] written in light of public policy considerations in favor of [the ordinance in question] and similar ordinances.” Id. at 389.
¶ 8. In Ryals, this Court again considered a preemption challenge to a local ordinance concerning alcohol. Ryals, 48 So.3d at 448. The Court stated that the relevant inquiry in the case was whether state law contradicted the ordinance in question. Id. at 448. The ordinance at issue restricted possession and consumption of alcohol on local waterways. Id. at 445-46. The Board of Supervisors had passed the ordinance in response to numerous drownings and other serious accidents caused by excessive consumption of alcohol. Id. at 446. We found that a portion of the ordinance dealing with possession of alcohol was preempted by state law because it directly contradicted Mississippi Code Sections 67-1-7 and 67-3-5. Id. at 448-49. However, we upheld the portion of the ordinance dealing with consumption of alcohol, because the state statute in question did not specifically speak to issues of consumption. Id. at 449-50.
¶ 9. In Somerville v. Keeler, 165 Miss. 244, 145 So. 721 (Miss.1933), the Court upheld a local ordinance against arguments that it was preempted by state law. Keeler concerned an ordinance making it unlawful for any person under the age of fifteen to drive an automobile within the city limits. Id. at 723. Appellees contend *723 ed that the city ordinance was in conflict with state statutory law providing that “[n]o person shall operate or attempt to operate a motor vehicle while such person is in a state of intoxication, or is in other respects incapable of properly and safely operating said motor vehicle, on any public highway, street, avenue or alley within this state.” Id. The Court disagreed, finding that the local ordinance was “merely supplementary” to the state statute. Id. Further, the enactment of the ordinance was a valid exercise of the city’s jurisdiction over the streets. Id.
¶ 10. The Court also upheld a local ordinance in Hattiesburg Firefighters Local 184 v. City of Hattiesburg, 263 So.2d 767, 772 (Miss.1972). In that case, the ordinance in question required all municipal employees to reside within the city limits. Id. at 768. It was argued that this ordinance was inconsistent with Section 3825-09 of the Mississippi Code 1942 (1956), which stated:
[a]ll applicants for a position of any kind under civil service must be a citizen of the United States, an elector of the county in which he resides and must have so resided for a period of at least three years immediately preceding the filing of his application.
Id. at 769. The Court said that the relevant inquiry was whether the state statute prohibited the local ordinance, or whether the local ordinance was an additional regulation not inconsistent with state law. Id. at 770. The Court held that the ordinance in question was an additional regulation not in conflict with the state statute. Id. The Court further said that the enactment of this ordinance was within the Legislature’s broad grant of authority to the city to “promote efficient conduct of the business of the city.” Id.
¶ 11. These cases show that this Court resolves the issue of whether state law preempts local law by considering the express language of a statute to determine whether there is a direct conflict between the state statute and the local ordinance. We turn to the statutes governing the OGB. Mississippi Code Section 53-1-1, which created the OGB, states:
It is hereby declared to be in the public interests to foster, encourage and promote the development, production and utilization of the natural resources of oil and gas in the State of Mississippi; and to protect the public and private interests against the evils of waste in the production and utilization of oil and gas, by prohibiting waste as herein defined; to safeguard, protect and enforce the coequal and correlative rights of owners in a common source or pool of oil and gas to the end that each such owner in a common pool or source of supply of oil and gas may obtain his just and equitable share of production therefrom; and to obtain, as soon as practicable, consistent with the prohibition of waste, the full development by progressive drilling of other wells in all producing pools of oil and gas or of all pools which may hereafter be brought into production of such, within the state, until such pool is fully defined.
Miss.Code Ann. § 53-1-1 (Rev.2003). The OGB’s powers and duties are listed in Section 53-1-17, which states, in part, that “[t]he board shall have jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this chapter and all other laws relating to the conservation of oil and gas.” Miss.Code Ann. § 53-1-17(1) (Rev.2003). But the OGB’s governing statutes do not expressly define OGB’s role in promoting public safety from the dangers posed by oil and gas operations.
¶ 12. Certainly, the OGB has jurisdiction over cleanup. Donald v. Amoco Prod. Co., 735 So.2d 161, 177 (Miss.1999). But *724 the Legislature has expressed no intent for the OGB to have exclusive governance over general issues of safety in the industry. The OGB does have authority to make necessary regulations concerning the prevention of blowouts and fee hazards. Miss.Code Ann. § 53-l-17(3)(f)-(g) (Rev. 2003). But nowhere does the statute state that this authority is exclusive to the OGB. Indeed, in a different section, the Legislature expressly granted the OGB exclusive authority to regulate the “use, management, manufacture, production, ownership, investigation and noncommercial disposal of oil field exploration and production waste_” Miss.Code Ann. § 53-1-17(7) (Rev.2003). This indicates that the Legislature did not intend for the OGB to have exclusive jurisdiction over safety issues in the industry.
¶ 13. Forrest County’s fencing ordinance is not inconsistent with state oil and gas statutes and regulations and can be read as supplemental to these laws. The OGB has not promulgated any regulation prohibiting perimeter fencing around oil and gas storage sites. As in Maynard, in this case statutory and regulatory law have not specifically addressed the requirement of perimeter fencing. Therefore, we find that the Board had the authority to enact the fencing ordinance to protect the citizens of Forrest County. Under the authority of Section 19 — 3—40(1), the Board had the ability to respond to the dangers surrounding oil and gas storage tanks to protect citizens and prevent further injuries or death.
¶ 14. We recognize that the OGB issued an order that considered and rejected perimeter fencing requirements for oil field facilities. The OGB’s order stated:
After careful evaluation, the Board has concluded that the adoption of mandatory fencing requirements for those facilities would be inappropriate. In addition, the Board has concluded that the adoption of mandatory fencing for those facilities would significantly increase (rather than decrease) the safety risks to first-responders and oil field personnel in the event of oil field emergencies (fees, explosions, etc.).
Miss. Oil and Gas Bd. Order No. 452-2011 (October 5, 2011). But, although the OGB issued an order, it did not amend Rule 6 to address fencing; therefore, there is no conflict between the fencing ordinance and any OGB rules and regulations. It is notable that, despite the safety concerns cited by the OGB, it did not amend Rule 6 to ban all fencing at oil and gas facilities. And even though the OGB has considered the fencing issue, the Legislature has not expressly granted the OGB the exclusive authority to address industry safety issues. We find that the fencing ordinance does not contradict state law and was not preempted. Further, because we find no support in our caselaw for Delphi’s argument that the federal doctrine of field preemption should apply to this matter, we reject Delphi’s argument that the Legislature intended to preempt the entire field.
¶ 15. We note Delphi’s argument that the fencing ordinance creates an “operational conflict” between the fencing ordinance and the rules and regulations of the OGB. The OGB has authority to make inspections of oil and gas sites. Miss.Code Ann. § 53-1-17(2) (Rev.2003). Mississippi Code Section 53-1-33 provides that the State Oil and Gas supervisor “and his representatives or employees shall have access to all wells drilled for oil or gas at any and all times.” Miss.Code Ann. § 53-1-33 (Rev.2003). Delphi argues that the fencing ordinance will hinder the OGB’s seven field inspectors from performing random site inspections, because they will be required to obtain preapproval before accessing a locked well site.
¶ 16. We observe that the fencing ordinance does not materially impede the in *725 spection duties of the OGB; the issue of inspectors’ access to sites could be dealt with without undue hardship. The inspectors would not need to give significant advance notice in order to perform their inspections. Inspectors could make an appointment or obtain access from the owner or manager of the oil or gas site. Alternatively, keys could be provided to the inspectors, or combination locks could be installed. In light of the public-policy considerations cited by the Board in its order adopting the fencing ordinance, the inconvenience to field inspectors is minimal.

CONCLUSION

¶ 17. Because the fencing ordinance promulgated by Forrest County is not preempted by state law, we affirm the circuit court’s decision to uphold the ordinance.
¶ 18. AFFIRMED.
DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.

. The Board did not participate in the OGB proceedings that culminated in the amendments to Rule 6.

. The OGB obtained permission to Hie an amicus brief and participate in oral argument before the circuit court. Other oil companies also filed amici briefs in tire circuit court and this Court.